**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Weidman v. Hildebrant*, **Slip Opinion No. 2024-Ohio-2931.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-2931

WEIDMAN, APPELLEE, *v.* HILDEBRANT, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Weidman v. Hildebrant*, Slip Opinion No. 2024-Ohio-2931.]**

*Statute of limitations—R.C. 2305.11—Libel—Discovery rule—Discovery rule applies to claims of libel when the publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable to plaintiff due to nature of the publication—Discovery rule applies to derivative claims that are premised on the same allegations as the claim of libel— Court of appeals' judgment affirmed and cause remanded.*

(Nos. 2022-0837 and 2022-1042—Submitted May 16, 2023—Decided August 8, 2024.)

APPEAL from and CERTIFIED by the Court of Appeals for Warren County, No. CA2021-09-084, 2022-Ohio-1708.

_____

DONNELLY, J., authored the opinion of the court, which STEWART, BRUNNER, and MAYLE, JJ., joined. MAYLE, J., authored a concurring opinion. FISCHER, J., concurred in judgment only. KENNEDY, C.J., and WILKIN, J.,

dissented, with opinions. KRISTY S. WILKIN, J., of the Fourth District Court of Appeals, sat for DEWINE, J. CHRISTINE MAYLE, J., of the Sixth District Court of Appeals, sat for DETERS, J.

**DONNELLY, J.**

## I. INTRODUCTION

{¶ 1} In this appeal, we are asked to determine when a cause of action for libel accrues when the reputational injury caused to the defamed person is inherently unknowable because the publication of the libelous statements was secretive or concealed. We hold that the discovery rule applies to claims of libel when the publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable to the plaintiff due to the nature of the publication. We also hold that the discovery rule applies to derivative claims that are premised on the same allegations as the claim of libel. Accordingly, we affirm the judgment of the Twelfth District Court of Appeals.

## II. FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellant, Christopher Hildebrant, is a Cincinnati-based real-estate developer. In 2011, Hildebrant facilitated the sale of property owned by SDI Foods, Inc. ("SDI Foods"), to Sycamore Township for development. If SDI Foods successfully sold the property to Sycamore Township, Hildebrant expected to receive a consulting fee from both Sycamore Township and SDI Foods. During the facilitation of the transaction, Hildebrant worked with SDI Foods representative Stanford Roberts and the Sycamore Township Board of Trustees, a board on which appellee, Thomas Weidman, served. Hildebrant has alleged that Roberts and Weidman each sought a kickback from Hildebrant, whose consulting fees for the transaction would have been substantial. Hildebrant has further alleged that Weidman threatened to block the transaction unless he received his payment. Hildebrant has claimed that in order to appease them and "save the deal," he told

both Roberts and Weidman that he would pay each of them, although Hildebrant has also asserted that he never intended to make either payment.

{¶ 3} Hildebrant has claimed that he never paid any money to either Weidman or Roberts but that Roberts aggressively pursued the illicit payment. To alleviate the pressure, Hildebrant created a fictitious email account with the address tweidman12@gmail.com and sent an email (the "2011 email") from that account to himself on December 20, 2011. The email portrayed Weidman as having accepted an illicit payment from Hildebrant and demanding more payments in exchange for his support in another real-estate transaction. Hildebrant forwarded the 2011 email to Roberts to show that he did not have enough money to pay Roberts, because Weidman had already demanded significant payments. The 2011 email remained private between Hildebrant and Roberts for the next several years.

{¶ 4} In 2019, Hildebrant sought to purchase a parcel of land owned by Sycamore Township on behalf of his development group. The parcel purchase required unanimous consent by the Sycamore Township Board of Trustees, on which Weidman still served. Weidman opposed the sale of the parcel of land.

{¶ 5} On January 25, 2020, Hildebrant met with Sycamore Township Trustee James LaBarbara and Sycamore Township Administrator Raymond Warrick to discuss the parcel purchase. During the meeting, Hildebrant asserted that Weidman's opposition to the sale was in retaliation for Hildebrant's failure to pay Weidman a kickback from the SDI Foods transaction in 2011 and Hildebrant showed the 2011 email to LaBarbara and Warrick.

{¶ 6} Because the 2011 email revealed potential illegal conduct, the auditor of Ohio was notified and an investigation was initiated. The auditor's special-investigations unit ("SIU") subpoenaed the 2011 email. On November 18, 2020, Weidman first learned of the 2011 email during an interview with investigators from the SIU. Weidman denied the 2011 email's authenticity, telling the

investigators he owned no such email address and did not write the email. Weidman did not receive a copy of the 2011 email until January 2021.

{¶ 7} Weidman filed suit against Hildebrant on February 17, 2021, claiming defamation, intentional infliction of emotional distress ("IIED"), and false-light invasion of privacy. In his answer, Hildebrant admitted that he had created the 2011 email and had shared it with LaBarbara and Warrick but raised the affirmative defense that Weidman's claims were barred by the statute of limitations.

{¶ 8} Hildebrant filed a motion for summary judgment, arguing that because the 2011 email, which forms the basis of Weidman's claims, was forwarded to Roberts in December 2011, Weidman's defamation claim was time-barred. Likewise, Hildebrant argued that the IIED and false-light-invasion-of-privacy claims were also time-barred because those claims are derivative of the alleged defamation. Alternatively, Hildebrant argued that even if the court found that the date of publication was January 25, 2020—when the 2011 email was first shown to LaBarbara and Warrick—the claims were still time-barred because the complaint was filed in February 2021, more than a year after the publication to LaBarbara and Warrick.

{¶ 9} Weidman opposed the motion for summary judgment, arguing that the "discovery rule" applied because the publication of the 2011 email had been done in secret. Weidman argued that the running of the statute-of-limitations period had been tolled until November 2020 when he learned about the 2011 email during the SIU interview.

{¶ 10} The trial court granted Hildebrant's motion for summary judgment, relying on *Rowan v. Schaffer*, 2019-Ohio-3038, ¶ 3 (8th Dist.), which held that a defamation claim accrues at the time that the allegedly defamatory statement is first published to a third party. The court of appeals in *Rowan* rejected the discovery rule's application to defamation claims, noting that it is of no legal consequence

that the "subject of the alleged defamation does not discover the statements until after the running of the statute of limitations." *Id.*

{¶ 11} Weidman appealed, and the Twelfth District Court of Appeals reversed, holding that the discovery rule applied to defamation claims when the publication of the defamatory statements was secretive, concealed, or otherwise inherently unknowable. 2022-Ohio-1708, ¶ 29 (12th Dist.). The court of appeals relied on *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84 (1983), and subsequent cases in which we applied the discovery rule. 2022-Ohio-1708 at ¶ 23 (12th Dist.). On Hildebrant's motion, the Twelfth District certified that its decision was in conflict with decisions from other appellate districts. We subsequently determined that a conflict exists and ordered briefing on the following issues:

> Does the discovery rule apply to libel actions where the publication of the defamatory statements was secretive, concealed, or otherwise unknowable such that the cause of action does not accrue until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant? Where a derivative claim is premised upon the same allegations, does the discovery rule apply to that claim as well?

2022-Ohio-3636. We also accepted jurisdiction over the sole proposition of law in Hildebrant's discretionary appeal: "The discovery rule does not apply to defamation claims, even where the publication of the defamatory statements was secretive, concealed, or otherwise inherently unknowable." *See id.* We sua sponte consolidated the two cases for briefing. *Id.*

### III. ANALYSIS

{¶ 12} We review matters requiring statutory interpretation de novo. *Stewart v. Vivian*, 2017-Ohio-7526, ¶ 23.

**{¶ 13}** R.C. 2305.11(A) provides that "[a]n action for libel . . . shall be commenced within one year after the cause of action accrued." Because the statute does not define the term "accrued," we apply the plain and ordinary meaning of that term. *See State v. Chappell*, 2010-Ohio-5991, ¶ 3, 16-17; *see also O'Stricker* at paragraph one of the syllabus ("Absent legislative definition, it is left to the judiciary to determine when a cause 'arose' for purposes of statutes of limitations.").

## A. Discovery Rule

**{¶ 14}** In *Norgard v. Brush Wellman, Inc.*, 2002-Ohio-2007, ¶ 8, we stated the general rule that "a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." We have, however, recognized the discovery rule as an exception to this general rule. *Id.* Under the discovery rule, "a cause of action does not arise until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant." *Id.*, citing *Collins v. Sotka*, 81 Ohio St.3d 506, 507 (1998), citing *O'Stricker*, 4 Ohio St.3d 84. We reached that conclusion because "the application of the general rule 'would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence.'" *O'Stricker* at 87, quoting *Wyler v. Tripi*, 25 Ohio St.2d 164, 168 (1971). The discovery rule allows those who are injured adequate time to seek relief on the merits without undue prejudice to defendants. *See Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111, 114 (1983). But we have also stated that the discovery rule must be tailored to the particular context in which it is being applied. *Browning v. Burt*, 66 Ohio St.3d 544, 559 (1993).

**{¶ 15}** This court has applied the discovery rule to toll statutes of limitations in several different contexts. In *O'Stricker*, we applied the discovery rule to claims of bodily injury related to asbestos exposure. There, the plaintiff had been regularly exposed to asbestos at his job. *O'Stricker* at 84. Asbestos is a known carcinogenic

6

agent, exposure to which may cause a latent disease with a gestation period of up to 30 years. *Id.* at 84, 86, 89. Based on the circumstances of that case, we concluded that the discovery rule applied to bodily-injury actions under R.C. 2305.10. *Id.* at paragraph two of the syllabus ("When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant . . . ."). Put plainly, we found that application of the discovery rule was necessary to avoid the unconscionable result of barring the plaintiff from recovery before he even knew that he had been injured. *See id.* at 89.

{¶ 16} In *Oliver*, we applied the discovery rule to medical-malpractice claims, *Oliver* at syllabus, which at the time, were subject to a one-year time bar under the same statute at issue here, R.C. 2305.11(A), *Oliver* at 112.[1] In *Skidmore & Hall v. Rottman*, 5 Ohio St.3d 210, 211 (1983), we applied the discovery rule to legal-malpractice claims that were otherwise subject to a one-year time bar under R.C. 2305.11(A). We have also applied the discovery rule in cases involving wrongful-death claims, *Collins* at 511; hospital negligence in credentialing a physician, *Browning* at 558-559; certain sexual-abuse claims, *Ault v. Jasko*, 70 Ohio St.3d 114, 117-118 (1994), *superseded by statute as stated in Pratte v. Stewart*, 2010-Ohio-1860; and employer intentional torts, *Norgard* at ¶ 18. *See Harris v. Liston*, 86 Ohio St.3d 203, 206 (1999) (listing other situations in which we have applied the discovery rule).[2]

---

1. Since *Oliver* was decided, the General Assembly adopted a four-year statute of repose for medical-malpractice claims. R.C. 2305.113(C).

2. The first dissenting opinion correctly notes that this court has not uniformly applied the discovery rule, dissenting opinion of Kennedy, C.J., ¶ 52; this is because the rule has been applied in narrow circumstances, as here, to prevent an unconscionable result. In this case, the first dissenting opinion expresses empathy for Weidman, the person who was allegedly defamed. *See id.* at ¶ 60. The tenor of the first dissent, however, ultimately sympathizes with the alleged wrongdoer, Hildebrant, who is alleged to have intentionally created a fictitious email account, written the 2011 email and sent

**{¶ 17}** The discovery rule has not been applied to defamation claims.[3]  This dates to *Pearl v. Koch*, 5 Ohio Dec. 5, 6-8 (Super.Ct. 1894), when the Superior Court of Cincinnati ruled that the statute of limitations for slander must be strictly construed and that the discovery rule did not apply.  Even though the Superior Court of Cincinnati was a court of law, not a court of equity, *id.* at 8, and therefore lacked the authority to apply equitable principles like the discovery rule, various courts of appeals have adhered to the rule announced in *Pearl* and have strictly construed the statute of limitations for defamation, *see, e.g.*, *Kienow v. Cincinnati Children's Hosp. Med. Ctr.*, 2015-Ohio-4396, ¶ 8 (1st Dist.); *Harvey v. Sys. Effect, L.L.C.*, 2020-Ohio-1642, ¶ 35 (2d Dist.); *Spitzer v. Knapp*, 2019-Ohio-2770, ¶ 27 (5th Dist.); *Reed v. Jagnow*, 2013-Ohio-2546, ¶ 25 (7th Dist.); *Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio App.3d 651, 654-655 (10th Dist. 2001); *Altier v. Valentic*, 2004-Ohio-5641, ¶ 38 (11th Dist.); *Daubenmire v. Sommers*, 2004-Ohio-914, ¶ 82 (12th Dist.).  At least one appellate court has held to the contrary.  *See Dipillo v. Cashen*, 1983 Ohio App. LEXIS 11595, *3-4 (6th Dist. Aug. 12, 1983) (holding that under R.C. 2305.11(A), the statute of limitations for libel or slander commences "when the plaintiff discovers, or, in the exercise of reasonable care and diligence, should have discovered the resulting injury").  Today, we conclude that the discovery rule applies to claims of libel based on reputational injuries when the

---

that email to himself as if it was sent from the fictitious email account, published the 2011 email by forwarding it to Roberts, and republished the 2011 email several years later by showing it to LaBarbara and Warrick in order to impugn Weidman.  If, as the first dissenting opinion states, the discovery rule does not apply in the narrow circumstances here, this illicit practice may become a regular occurrence.

3. Many statements in the record of this case refer to "defamation," which comprises slander and libel. *Sweitzer v. Outlet Communications, Inc.*, 133 Ohio App.3d 102, 108 (10th Dist. 1999).  This opinion focuses on libel, which is a defamatory statement that is "written or printed and published," *Watson v. Trask*, 6 Ohio 531, 532-533 (1834), because this case involves a published email, though, at times, we use the more general word "defamation."

publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable to the plaintiff due to the nature of the publication.[4]

### B. Weidman's Defamation Claim

{¶ 18} According to Weidman, the 2011 email containing allegedly defamatory statements that Hildebrant forwarded to Roberts was not otherwise shared or communicated to anyone else prior to 2020. Based on the private nature of the 2011 email, Weidman alleges that he could not have known that he had suffered reputational harm until 2020 when, after a second publication of the email but in this instance to LaBarbara and Warrick, the defamatory statements were disclosed to Weidman. We conclude that Weidman could not have known of the potential injury to his reputation until he became aware of the allegedly defamatory statements; we make no determination about when he became aware of the defamatory statements.

{¶ 19} In *O'Stricker*, 4 Ohio St.3d at 89, we applied the discovery rule because asbestos exposure may cause a latent disease with a gestation period that is longer than the statutory period for bringing a claim. Here, the delay in reputational harm was not due to an inherent latency but, rather, to intentional conduct by Hildebrant to use secret communications to allegedly defame Weidman. If the cause of action for a defamation claim accrued upon the publication of the defamatory statements, a tortfeasor could conceal that publication until the statute-of-limitations period had expired. This would mean that a tortfeasor could secretly publish defamatory statements without concern that the defamed person would be able to seek recourse. "How can anyone charged with the responsibility of

---

4. The first dissenting opinion accuses the majority of this court of rewriting laws and circumventing the General Assembly in this case. Dissenting opinion of Kennedy, C.J., at ¶ 39-40. We do no such thing. Instead, as we have done in other contexts such as those discussed above, we are merely determining when a cause of action for a tort accrues under certain circumstances. Specifically, we determine when a cause of action for libel accrues when the publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable to the plaintiff due to the nature of the publication.

administering justice allow such an absurdity?" *Amer v. Akron City Hosp.*, 47 Ohio St.2d 85, 93 (1976) (Celebrezze, J., dissenting) (urging application of the discovery rule to a husband's claims of loss of consortium, loss of services, and medical expenses arising from an alleged medical malpractice on his wife).

**{¶ 20}** Statutes of limitations are a shield, not a sword. Here, according to Weidman, the delay in him discovering the alleged injury to his reputation was deliberately manufactured by Hildebrant. Private email communications used to defame someone are inherently not discoverable by the defamed person until the communication is disclosed publicly. Statutes of limitations are enacted to ensure fairness to defendants, encourage prompt prosecution of causes of action, suppress stale claims, and avoid difficulties of proof because of lost or eroded evidence. *Browne v. Artex Oil Co.*, 2019-Ohio-4809, ¶ 32. Applying the discovery rule to cases such as the one before us offends none of these goals. Rather, it reflects the understanding that a tortfeasor should not be permitted to secretively injure a person and avoid liability for that injury by hiding behind a statute of limitations.

**{¶ 21}** Today, we hold that the discovery rule applies to claims of libel when the publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable to the plaintiff due to the nature of the publication.[5] This accords with the rationale explained by Justice Cook in *NCR*

---

5. The first dissenting opinion reads too much into nothing when it states that "the use of the discovery rule also directly contradicts the General Assembly's clear intent to not extend the discovery rule to defamation cases." Dissenting opinion of Kennedy, C.J., at ¶ 54. That the General Assembly is aware of the discovery rule and has not applied it to defamation claims is not proof of anything except that the General Assembly has not applied the discovery rule to defamation claims. One example should clarify this issue. In *Klein v. Leis*, 2003-Ohio-4779, ¶ 9, this court addressed a statutory scheme that prohibited the carrying of concealed weapons. We concluded that the statutory scheme "that has been part of our legal heritage since 1859, that has been amended by our General Assembly time and again without fundamental modification, that did not arouse the concern of two different constitutional conventions, and that has been held by this court to be constitutional" was constitutional. *Id.* at ¶ 11. According to the logic of the first dissent in this case, the fact that the General Assembly had not changed the statutory scheme that prohibited the carrying of concealed weapons would have been proof that it did not want to change the scheme. But, of course,

*Corp. v. U.S. Mineral Prods. Co.*, 72 Ohio St.3d 269, 271 (1995), in which, citing *O'Stricker*, she stated that the "discovery rule is invoked in situations where the injury complained of may not manifest itself immediately and, therefore, fairness necessitates allowing the assertion of a claim when discovery of the injury occurs beyond the statute of limitations." *See Collins*, 81 Ohio St.3d at 510 ("the discovery rule was adopted to prevent inequities that occur when a statute of limitations is rigidly followed").

{¶ 22} When defamatory statements are published in the media or otherwise offered in the marketplace of ideas or when the defamed person gains knowledge of the defamatory statements within the statute-of-limitations period, the discovery rule is not applicable. As the Latin maxim aptly states, vigilantibus non dormientibus aequitas subvenit—equity aids the vigilant, not those who sleep on their rights. *New York City v. Pine*, 185 U.S. 93, 98 (1902); *Ivani Contracting Corp. v. New York City*, 103 F.3d 257, 259 (2d Cir. 1997). We do little more today than recognize, again, though in a new context, that a plaintiff cannot be said to have slept on his rights when he was unaware that he was injured. *Oliver*, 5 Ohio St.3d at 114 ("Use of the discovery rule eases the unconscionable result to innocent victims who by exercising even the highest degree of care could not have discovered the cited wrong.").

{¶ 23} Weidman alleges that he did not know and could not have discovered even with the exercise of due diligence the allegedly defamatory statements made by Hildebrant and that he was not injured until they were disclosed to him during

---

that the General Assembly has not done something is proof of nothing; within a year of our decision in *Klein*, the General Assembly amended the statutory scheme to allow sheriffs to issue licenses to carry concealed handguns to certain persons. Am.Sub.H.B. No. 12, 150 Ohio Laws, Part II, 3297. The general point is that we know what the General Assembly wants by its action, not by its inaction. Similarly, it would be folly for litigants to rely on the fact that we did not accept jurisdiction over an issue as proof that we will not accept jurisdiction over a similar, or even the same, issue in the future.

the interview with SIU investigators. Accordingly, he argues that he could not have brought an action against Hildebrant until November 2020. He filed suit within one month of receiving a copy of the 2011 email.

{¶ 24} Hildebrant argues that applying the discovery rule to defamation claims will unduly prejudice defendants by subjecting them to endless liability. This argument is unavailing because any unfairness to defendants is far outweighed by the undue prejudice faced by plaintiffs who are barred from recovery before they even know that they have been libeled. A tortfeasor ought not be allowed to privately libel another person and benefit from the ability to keep that libelous statement a secret.

{¶ 25} Moreover, evidence in a libel claim such as this one tends not to be stale, because modern technology and media allow evidence to be well preserved. The 2011 email provides the exact date and time that it was sent as well as the sender and all recipients. "[A]s problems of proof and defense dwindle, so does the persuasiveness of the 'stale claims' reasoning." *Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198, 200 (1972).

*C. Weidman's Derivative Claims*

{¶ 26} In addition to his defamation claim, Weidman also asserted claims of IIED and false-light invasion of privacy against Hildebrant. To determine which statute of limitations applies to these claims, we must look to the substance of the claims. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

{¶ 27} Both parties agree that because the substance of the IIED claim and the false-light-invasion-of-privacy claim are virtually identical to the defamation claim, the statute of limitations associated with the defamation claim controls. The court of appeals agreed. 2022-Ohio-1708 at ¶ 37 (12th Dist.). We also agree and hold that because the alleged conduct underlying the IIED claim and the false-light-invasion-of-privacy claim is virtually identical to the alleged conduct underlying the defamation claim, the applicable statute of limitations for Weidman's IIED

claim and false-light-invasion-of-privacy claim is R.C. 2305.11(A). *See Stainbrook v. Ohio Secy. of State*, 2017-Ohio-1526, ¶ 27 (10th Dist.) (holding that "a false light invasion of privacy claim[] involving allegations that would also support a defamation claim has the same statute of limitations applied to it as the defamation claim"); *Boyd v. Archdiocese of Cincinnati*, 2015-Ohio-1394, ¶ 51 (2d Dist.) (holding that "where defamation is the basis for an intentional infliction of emotional distress claim, the applicable one-year statute of limitations for defamation also applies to the emotional distress claim"). To hold otherwise would allow a plaintiff to repackage a defamation claim as a separate cause of action to avail a longer statute of limitations. For the reasons discussed above, the discovery rule applies to these derivative claims.

## IV. CONCLUSION

{¶ 28} We hold that the discovery rule applies to claims of libel based on reputational injuries when the publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable to the plaintiff due to the nature of the publication. Because Hildebrant's publication of allegedly libelous statements in the 2011 email was allegedly secretive, concealed, or otherwise inherently unknowable to Weidman, the cause of action for defamation may not have accrued until Weidman discovered the 2011 email on November 18, 2020. Additionally, because Weidman's claims of IIED and false-light invasion of privacy are virtually identical to the defamation claim, the statute of limitations for those derivative claims is subject to the same discovery rule. We affirm the judgment of the Twelfth District Court of Appeals and remand the cause to the Warren County Court of Common Pleas for further proceedings.

Judgment affirmed
and cause remanded.

**MAYLE, J., concurring.**

13

{¶ 29} I agree with the overall analysis and ultimate decision set forth in the majority opinion, but I wish to clarify some of my reasoning.

{¶ 30} The majority states that "we know what the General Assembly wants by its action, not by its inaction." Majority opinion, ¶ 21, fn. 5. This is not always true. In fact, the General Assembly's failure to specify when a libel claim "accrue[s]" under R.C. 2305.11(A)—i.e., its inaction—while simultaneously specifying an accrual date for the tort of unlawful abortion under division (B) of that same statute is relevant to my analysis here.

{¶ 31} R.C. 2305.11(B) shows that the legislature knows how to specify when a claim "accrues." Under R.C. 2305.11(B), a civil action for unlawful abortion accrues on the date of the performance or inducement of the abortion or the attempt to perform or induce the abortion. Other examples of statutes that specify when a cause of action accrues include R.C. 2305.07(C) (cause of action for a claim arising out of a consumer transaction "accrues thirty calendar days after the date of the last charge or payment by, or on behalf of, the consumer, whichever is later"); R.C. 2305.091(B) (cause of action by a board of education for asbestos abatement in a board-owned building accrues "upon the date that the board of education is informed" by a certain specified entity that there is asbestos that should be removed because it poses a health hazard to users of the building); R.C. 2305.10(A) (cause of action "based on a product liability claim" and "for bodily injury or injuring personal property" accrues, subject to certain exceptions, "when the injury or loss to person or property occurs"); R.C. 2305.111(B)(1) and (2) (cause of action for a claim of assault or battery accrues on the date the alleged assault or battery occurs, unless the plaintiff did not know the identity of the tortfeasor); R.C. 2305.114 (civil action for partial-birth feticide or dismemberment feticide accrues on the date of "the commission of the offense"); and R.C. 2305.13 (cause of action for a claim in respect to a shipment of property accrues "upon the delivery, or tender of delivery thereof, by the carrier").

14

{¶ 32} When the legislature has not made clear when a cause of action accrues, "the matter has been relegated to determination by the Ohio judiciary." *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 180 (1989). This court has applied the discovery rule to determine the "accrual" of a claim when, like here, the legislature has left the matter open to the judiciary. *See* majority opinion at ¶ 15-16.

{¶ 33} When doing so, this court has described the discovery rule in two ways—sometimes within the same opinion. It has said that the discovery rule relates to when a cause of action "accrues." *See, e.g.*, *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 2011-Ohio-1961, ¶ 13 (discussing discovery rule in terms of accrual); *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111 (1983), syllabus (same); *see also Collins v. Sotka*, 81 Ohio St.3d 506, 507 (1998) (explaining that under the discovery rule, "a cause of action accrues when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she was injured by the wrongful conduct of the defendant"); *Investors REIT One* at 180 (recognizing that in some circumstances, the "discovery rule is appropriate for calculating when a cause of action accrues for purposes of defining a limitations period"). This court has also described the discovery rule as "tolling" the statute of limitations. *See, e.g.*, *Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198, 201 (1972); *Collins* at paragraph one of the syllabus (holding that the discovery rule applies to toll the two-year statute of limitations for a wrongful-death claim); *Investors REIT One* at 180 (explaining that "[d]epending on the claim and the applicable statute, the date of discovery may toll the running of the governing statute of limitations"); *see also Oliver* at 118-119 (Holmes, J., dissenting) (characterizing the discovery rule as a tolling event). The two concepts, however, are distinct. "Toll" means "to stop the running of; to abate," *Black's Law Dictionary* (11th Ed. 2019), while "accrue" means "[t]o come into existence as an enforceable claim or right," *id.*

**{¶ 34}** In my view, the discovery rule is most accurately described as "a rule of accrual." *Liddell v. SCA Servs. of Ohio, Inc.*, 70 Ohio St.3d 6, 13 (1994) (referring to the discovery rule as the "*O'Stricker* rule of accrual"), citing *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84 (1983). That is, "a cause of action *does not arise* until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, that he or she was injured by the wrongful conduct of the defendant." (Emphasis added.) *Norgard v. Brush Wellman, Inc.*, 2002-Ohio-2007, ¶ 8. When the discovery rule applies, there is nothing to "toll" because the action has not yet "accrued."

**{¶ 35}** When the discovery rule is viewed through an "accrual" lens, those instances in which the legislature has codified the discovery rule, *see* dissenting opinion of Kennedy, C.J., ¶ 54, are additional examples of the General Assembly's exercising its prerogative to specify an accrual date. If the legislature does *not* want the discovery rule to apply to a claim, it specifies an accrual date in a manner that precludes the discovery rule's application as discussed above or it otherwise signals its intent with respect to a particular statute. For example, R.C. 1302.98(B) provides that a cause of action for the breach of a contract for sale "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," which clearly indicates the legislature's intent that the discovery rule not be applied to that type of claim.

**{¶ 36}** There are other instances when the legislature's intent to not extend the discovery rule is not express but may be inferred. For example, in *Investors REIT One*, this court declined to extend the discovery rule to claims of accountant negligence, which are governed by the four-year statute of limitations for general negligence under R.C. 2305.09(D), because R.C. 2305.09 contains an express discovery rule for other actions—i.e., actions for trespassing underground or injury to mines, for the wrongful taking of personal property, and for fraud—but not for "injury to the rights of the plaintiff not arising on contract" under division (D) of

R.C. 2305.09, which was the division at issue in that case. This court reasoned that "[t]he legislature's express inclusion of a discovery rule for certain torts arising under R.C. 2305.09, including fraud and conversion, implies the exclusion of other torts arising under [that same] statute, including negligence." *Investors REIT One*, 46 Ohio St.3d at 181.

{¶ 37} Here, R.C. 2305.11 is silent on the discovery rule. In addition, it contains a specific date of accrual for some claims—e.g., unlawful abortion under R.C. 2305.11(B)—but not for the claims specified under R.C. 2305.11(A), which includes libel. For these reasons, I agree with the majority opinion that the General Assembly has left it to the judiciary to determine whether the discovery rule should apply to the accrual of libel claims.

———————————

**KENNEDY, C.J., dissenting.**

{¶ 38} For more than 170 years, the statute of limitations for a defamation claim in Ohio—slander or libel—has been one year from the date that the cause of action accrued and the cause of action accrued on the date of publication.

{¶ 39} Today, the majority engages in judicial activism and rewrites Ohio law. The majority "ignore[s] governing texts and precedents" and allows its "personal views about public policy . . . to guide [its] decisions." *Black's Law Dictionary* (12th Ed. 2024) (defining "judicial activism"). The majority takes the judicially created "discovery rule," which has been narrowly applied in bodily-injury, medical-malpractice, and actual-economic-loss cases, and expands its application to defamation cases. By holding that the date of publication does not control when a defamation cause of action accrues, the majority's decision "thrust[s] the judiciary into the role of law maker," Stefanie A. Lindquist, *Judicial Activism in State Supreme Courts: Institutional Design and Judicial Behavior*, 28 Stan.L. & Pol'y Rev. 61, 67 (2017).

{¶ 40} Today's decision circumvents the public policy established by the General Assembly and is contrary to precedent from Ohio's appellate districts. Because this court "is not supposed to invent law but to apply it," Robert H. Bork, *The Judge's Role in Law and Culture*, 1 Ave Maria L.Rev. 19, 20 (2003), I dissent from the majority's judgment. The statute of limitations for a defamation claim begins to run when the allegedly defamatory words are first spoken or published, regardless of the aggrieved party's knowledge. Therefore, I would reverse the judgment of the Twelfth District Court of Appeals.

## I. Defamation

{¶ 41} "Defamation is defined as a false publication which injures a person's reputation." *Dale v. Ohio Civ. Serv. Emps. Assn.*, 57 Ohio St.3d 112, 117 (1991). Likewise, a defamatory matter is that which is "injurious to the reputation of a private individual." *Gert v. Robert Welch, Inc.*, 418 U.S. 323, 346 (1974). "To establish a claim for defamation, [a] plaintiff must prove by a preponderance of the evidence that a false publication caused injury to his reputation, or exposed him to public hatred, contempt, ridicule, shame, or disgrace, or affected him adversely in his trade or business." *Miller v. Ohio Rehab. Serv. Comm.*, 86 Ohio Misc.2d 97, 101 (Ct. of Cl. 1997), citing *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App.3d 359, 365 (8th Dist. 1990).

{¶ 42} There are two types of defamation—slander and libel. 35 Ohio Jur.3d, Defamation and Privacy, § 1, at 443 (2019). Slander is the spoken form of defamation. *Id.* Libel is the written form of defamation. *Id.* The allegedly defamatory statements in this case were written. A plaintiff must prove five elements to succeed on a libel claim: "'(1) a false and defamatory statement, (2) about plaintiff, (3) published without privilege to a third party, (4) with fault of at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff.'" *Lewis v. Delaware Cty. JVSD*, 2005-

Ohio-2550, ¶ 33 (5th Dist.), quoting *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (9th Dist. 1996).

## II.  Statute of Limitations

**{¶ 43}** A statute of limitations is a "law that bars claims after a specified period." *Black's*.  The statute of limitations begins to run when the cause of action accrues.  *See Norgard v. Brush Wellman, Inc.*, 2002-Ohio-2007, ¶ 8.  "Generally, a cause of action accrues . . . at the time the wrongful act was committed."  *Id.* Exceptions to a statute of limitation must be set forth by the General Assembly. *See* 51 Am.Jur.2d, Limitation of Actions, § 151, at 600 (2021).  "Courts will not, as a general rule, read into statutes of limitations exceptions that are not written into the statute, however reasonable such exceptions may seem and even though such exceptions would be equitable."  *Id.*, citing *Foxworth ex rel. Estate of Durden v. Kia Motors Corp.*, 377 F.Supp.2d 1196 (N.D.Fla. 2005), *aff'd,* 148 Fed.Appx. 920 (11th Cir. 2005); *Muskingum Watershed Conservancy Dist. v. Steinmetz*, 57 Ohio App. 502 (5th Dist. 1937); *Bain v. Smith*, 97 S.W.2d 353 (Tex.Civ.App. 1936).

**{¶ 44}** "Statutes of limitation are designed to assure an end to litigation and to establish a state of stability and repose."  *Wyler v. Tripi*, 25 Ohio St.2d 164, 171 (1971), *overruled on other grounds by Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111 (1983).  "It must be assumed that when the General Assembly enacts a statute of limitations it is aware that, although a stale claim may be meritorious, the statute will operate without reference to merit and will cut off the claim."  *Id.*  "The rationale underlying statutes of limitations is fourfold: to ensure fairness to defendant; to encourage prompt prosecution of causes of action; to suppress stale and fraudulent claims; and to avoid the inconvenience engendered by delay, specifically the difficulties of proof present in older cases."  *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 88 (1983), citing *Harig v. Johns-Manville Prods. Corp.*, 284 Md. 70, 75 (1978).

*A. Statute of Limitations on Defamation Claims*

**{¶ 45}** On March 11, 1853, the General Assembly passed an act "[t]o establish a Code of Civil Procedure" to be known as the "Code of Civil Procedure of the State of Ohio." 51 Ohio Laws 57. That code provided that civil actions for libel and slander must be brought within one year after the cause of action accrued. *Id.* At 59.

**{¶ 46}** A cause of action for defamation accrues at the time the defamatory words are communicated because the damage to reputation occurs immediately upon communication. *See Kienow v. Cincinnati Children's Hosp. Med. Ctr.*, 2015-Ohio-4396, ¶ 12 (1st Dist.). "For defamation as a result of slander, the statute of limitations begins to run from the time the words were spoken, whether the plaintiff had knowledge of the fact or not." *Miller*, 86 Ohio Misc.2d at 100; *see also Cramer v. Fairfield Med. Ctr.*, 2009-Ohio-3338, ¶ 69 (5th Dist.). "For defamation as a result of libel, a cause of action accrues upon the first publication of the defamatory matter." *Miller* at 100.

**{¶ 47}** The second dissenting opinion rejects the first-publication rule in favor of the single-publication rule. Specifically, the second dissent supports the principle set forth in the Restatement of the Law 2d, Torts, that "'each of several communications to a third person by the same defamer is a separate publication'" and gives rise to a new cause of action. Dissenting opinion of Wilkin, J., ¶ 99, fn. 11, quoting 3 Restatement of the Law 2d, Torts, § 577A(1), at 208 (1977). "Although the Restatements are frequently cited in cases and commentary, a Restatement provision is not binding on a court unless it has been officially adopted as the law by that jurisdiction's highest court." *Black's* (defining "Restatement").

**{¶ 48}** In Ohio, the single-publication rule has never been formally adopted by this court. And several of Ohio's appellate districts have wholly rejected the rule. *See, e.g.*, *Snell v. Drew*, 1985 WL 8216, *2 (6th Dist. Nov. 1, 1985) ("This court . . . expressly rejects the single publication rule, for the simple reason that it

does not state Ohio law."); *Fleming v. Ohio Atty. Gen.*, 2002-Ohio-7352, ¶ 14 (10th Dist.), quoting *Anthony v. Wonnell*, 1992 WL 230583 (10th Dist. Apr. 7, 1992) ("We cannot embrace plaintiff's continuing defamation theory . . . as this court has previously expressly rejected the single publication rule" as being "'in derogation of the prevailing first publication rule.'"); *T.S. v. Plain Dealer*, 2011-Ohio-2935, ¶ 7, quoting *Guccione v. Hustler Magazine*, 64 Ohio Misc. 59, 60 (C.P. 1978) ("It is well settled that '[i]n terms of publications . . . the right to file suit on a cause of action for libel accrues upon the first publication of the matter complained of.'" [Bracketed text and ellipsis in original.]). Therefore, adoption of the single-publication rule here would change established Ohio law. Not only does the single-publication rule conflict with Ohio law, but it also runs contrary to the purpose of the statute of limitations. Specifically, the single-publication rule does not "establish a state of stability and repose," *Wyler*, 25 Ohio St.2d at 171, because the cause of action for libel could potentially never end and the statute of limitations for libel would run every time the defamatory matter was republished.

### B. Judicially Created Discovery Rule Circumvents the Statute of Limitations

{¶ 49} The discovery rule is a judicially created doctrine that circumvents legislatively enacted statutes of limitations. Under the discovery rule, a cause of action does not accrue until the injured party learns or should have learned, through the exercise of reasonable diligence, that he or she has been injured by the conduct of the defendant. *See Doe v. Archdiocese of Cincinnati*, 2006-Ohio-2625, ¶ 21; *see also O'Stricker*, 4 Ohio St.3d at 90; *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 2011-Ohio-1961, ¶ 14. The discovery rule is an example of judicial activism because it "enhance[s] the power of the judiciary . . . [and] engage[s] the judiciary in certain lawmaking activities more properly exercised by the legislature and executive." Lindquist, 28 Stan.L. & Pol'y Rev. at 67.

{¶ 50} The discovery rule was first applied in Ohio in *Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198 (1972). *Melnyk* involved a medical-malpractice claim

that was based on metallic forceps and a nonabsorbent sponge being left inside a patient's body during surgery. *Id.* at 201. This court acknowledged that there is "a firm Ohio legislative history of opposition to the adoption of a 'discovery rule.'" *Id.* at 199. Nonetheless, this court determined that implementation of the discovery rule did not "interfere in the affairs" of the General Assembly. *Id.* at 201.

{¶ 51} Since *Melnyk*, this court has consistently applied the discovery rule to medical-malpractice and bodily-injury cases. *See, e.g.*, *Oliver*, 5 Ohio St.3d at 112 (medical malpractice); *O'Stricker* at 90 (bodily injury caused by exposure to asbestos); *Burgess v. Eli Lilly & Co.*, 66 Ohio St.3d 59, 64 (1993) (bodily injury caused by exposure to diethylstilbestrol). This court has also extended application of the discovery rule to legal-malpractice cases, *Skidmore & Hall v. Rottman*, 5 Ohio St.3d 210, 211 (1983), and to bodily-injury actions resulting from a hospital's negligence in credentialing a physician, *Browning v. Burt*, 66 Ohio St.3d 544, 559 (1993).

{¶ 52} As demonstrated in the caselaw, "[t]he discovery rule was developed in certain bodily-injury, medical-malpractice, and actual economic loss cases to ease 'the unconscionable result to innocent victims who by exercising even the highest degree of care *could not have* discovered *the cited wrong*.'" (Emphasis in original.) *Cramer*, 2009-Ohio-3338, at ¶ 70, fn. 2 (5th Dist.), quoting *Oliver* at 114. Consequently, this court has extended the discovery rule only in narrow circumstances when application of the general statute-of-limitations rule—that a cause of action accrues at the time the wrongful act was committed—would create an unconscionable result to the injured party's recovery. *See O'Stricker*, 4 Ohio St.3d at 87; *see also Wyler*, 25 Ohio St.2d at 168; *LGR Realty, Inc. v. Frank & London Ins. Agency*, 2018-Ohio-334, ¶ 26. Conversely, in *Flagstar*, this court held that the discovery rule did not apply to any professional-negligence claims. *Flagstar*, 2011-Ohio-1961, at ¶ 27 (discovery rule not applicable to any claims of professional negligence, including alleged negligence by an appraiser); *see*

*Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 182 (1989) (discovery rule not applicable to claims of professional negligence by accountants); *see also LGR Realty, Inc.* at ¶ 36-39 (DeWine, J., concurring) (discussing *Investors REIT One* and *Flagstar* and professional-negligence claims accruing at the time of the wrongful act).

### III. Discovery Rule Does Not Circumvent the Statute of Limitations for Defamation

{¶ 53} Extending the discovery rule to defamation claims contravenes the rule's intended narrow application and applies it to cases when the only injury is reputational harm. Unlike injuries in medical-malpractice cases, which may not present themselves until years after the negligent act, injuries in defamation cases occur as soon as the defamatory words are spoken or published. Ohio's appellate districts have universally held that a defamation cause of action accrues at publication. *See, e.g.*, *Kienow*, 2015-Ohio-4396, at ¶ 7-8 (1st Dist.) (holding that defamation claim began to accrue when the statements were made); *Harvey v. Sys. Effect, L.L.C.*, 2020-Ohio-1642, ¶ 35 (2d Dist.) (defamation cause of action accrues on date of publication of the defamatory matter); *Talwar v. Kattan*, 1998 WL 151072, *4 (3d Dist. Mar. 31, 1998) (libel cause of action accrues at publication); *Glass v. Glass*, 2003-Ohio-4477, ¶ 18 (4th Dist.) (defamation cause of action accrues when words are written or spoken, not when plaintiff discovers the words); *Lewis*, 2005-Ohio-2550, at ¶ 36 (5th Dist.) (holding that defamation cause of action accrues upon publication of the defamatory matter); *Tajblik v. Dennis*, 2012-Ohio-6251, ¶ 9 (6th Dist.) (libel cause of action began to accrue when the document was published "in the holding cell [in prison]"); *Reed v. Jagnow*, 2013-Ohio-2546, ¶ 25 (7th Dist.) (discovery rule does not apply to defamation claims and the cause of action accrues when defamatory words are published); *Rowan v. Schaffer*, 2019-Ohio-3038, ¶ 3 (8th Dist.) (defamation cause of action accrues at the time of publication); *Smith Elec. v. Rehs*, 1998 WL 103334, *2 (9th Dist. Feb. 18, 1998)

("the actual tort occurs when the party falsely and maliciously defames the property of another"); *Sabouri v. Ohio Dept. of Job & Family Servs.*, 145 Ohio App.3d 651, 654-655 (10th Dist. 2001) (defamation cause of action began to accrue when the defamatory words were published, not when injured party learned of the words); *Altier v. Valentic*, 2004-Ohio-5641, ¶ 38 (11th Dist.) (cause of action for defamation accrues when the words are published or spoken); *Daubenmire v. Sommers*, 2004-Ohio-914, ¶ 82 (12th Dist.) (libel cause of action accrues "when the written words are first published"). By changing when a defamation cause of action accrues, the majority opinion disrupts established law in every appellate district.

{¶ 54} The majority's decision to broaden the use of the discovery rule also directly contradicts the General Assembly's clear intent to not extend the discovery rule to defamation cases. The General Assembly is aware of the discovery rule and has extended its application, but only to cases that involve bodily injury, the potential for bodily injury, medical malpractice, or actual economic loss. For example, in 1992, the General Assembly enacted R.C. 2305.091, Am.Sub.H.B. No. 334, 144 Ohio Laws, Part III, 4847, 4847-4848, which includes a discovery-rule provision that tolls the statute of limitations for asbestos-abatement actions brought by school boards, R.C. 2305.091(B). Similarly, the General Assembly amended R.C. 2305.10 in 2005, Am.Sub.S.B. No. 80, 150 Ohio Laws, Part V, 7915, 7931-7933, and extended the discovery rule to actions claiming toxic-chemical bodily injury, R.C. 2305.10(B)(1) through (5). As recently as 2022, the General Assembly enacted R.C. 2305.118, 2022 Am.Sub.S.B. No. 288, which includes a discovery-rule provision for deoxyribonucleic bodily-injury actions, R.C. 2305.118(C)(1).

{¶ 55} "[W]e presume that the General Assembly knows of the state of the common law when it enacts legislation." *Ames v. Rootstown Twp. Bd. of Trustees*, 2022-Ohio-4605, ¶ 20. When the General Assembly has amended R.C. 2305.11, it has not applied the discovery rule to R.C. 2305.11(A)—the statute of limitations

for defamation. Rather, when the General Assembly has wanted to extend the discovery rule to claims under R.C. 2305.11, it has made statutory revisions to effect that extension.

{¶ 56} For example, in 2002, the General Assembly amended R.C. 2305.11 and removed the statute-of-limitations provision for medical, dental, optometric, and chiropractic claims. Am.Sub.S.B. No. 281, 149 Ohio Laws 3791, 3796-3797. Under the same legislative act, the General Assembly enacted R.C. 2305.113, which outlined the statute of limitations for bringing medical, dental, optometric, or chiropractic claims. *Id.* at 3799-3804. The newly created R.C. 2305.113 included a discovery-rule provision for those claims involving a foreign object being left in the claimant's body. *Id.* at 3800-3801. When the General Assembly passed Am.Sub.S.B. No. 281, its decision to not include a discovery-rule provision for claims of libel or slander was deliberate, not inadvertent. The legislature's decision to not extend the discovery rule to defamation claims was reaffirmed as recently as 2021, when the General Assembly last amended R.C. 2305.11 without adding any discovery-rule provision. *See* 2021 S.B. No. 13.

{¶ 57} The General Assembly's decision to not adopt a discovery rule for defamation claims is strong support for the assertion that "it was not the legislature's intent to apply the discovery rule to such claims." *Investors REIT One*, 46 Ohio St.3d at 181; *see id.* (holding that "failure to include general negligence claims under the discovery rule set out in R.C. 2305.09" showed the General Assembly's intent to not extend the rule to those claims); *Pratte v. Stewart*, 2010-Ohio-1860, ¶ 23 (discussing the concurring opinion in *Ault* and noting that concurring justice's view that "the General Assembly is the *most* appropriate body to establish a discovery rule for cases of childhood sexual abuse" [emphasis in original]), citing *Ault v. Jasko*, 70 Ohio St.3d 114, 119 (1994) (Resnick, J., concurring).

{¶ 58} If the discovery rule is to apply to defamation claims, "'it is the General Assembly that should [make that declaration] rather than this court.'" *Pratte* at ¶ 20, quoting *Ault* at 120 (Moyer, C.J., dissenting). I disagree with the majority's decision to extend application of the discovery rule to defamation claims because to "do so would place us in the obvious and untenable position of having not only legislated, but of having done so directly in the face of a clear and opposite legislative intent," *Wyler*, 25 Ohio St.2d at 171. "'[T]he only sure safeguard against crossing the line between adjudication and legislation is an alert recognition of the necessity not to cross it and instinctive, as well as trained, reluctance to do so.'" (Bracket texted in original.) *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 2017-Ohio-8988, ¶ 117 (Kennedy, J., dissenting), quoting Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 535 (1947).

{¶ 59} In the case between appellee, Thomas Weidman, and appellant, Christopher Hildebrant, an action for libel accrued when Hildebrant sent the fake, allegedly defamatory email about Weidman's alleged bribery demands to Stanford Roberts on December 20, 2011. The discovery rule does not apply here, because the libel injury manifested itself immediately when the email was delivered to Roberts. Although Weidman was unaware of the email until several years later, his reputation was injured the moment Roberts read the email.

{¶ 60} While I empathize with Weidman, the General Assembly has spoken. Because a cause of action for defamation accrues on the date of publication of the defamatory matter, the discovery rule does not apply to defamation claims, and Weidman was required to bring his defamation claim within one year after Hildebrant sent the fake email to Roberts. *See* R.C. 2305.11(A). Because Weidman did not bring his defamation claim within one year of publication of the fake email, his suit is barred by the statute of limitations set forth in R.C. 2305.11(A).

## IV. Conclusion

{¶ 61} The General Assembly is the final arbiter of public policy in Ohio. *See Sutton v. Tomco Machining, Inc.*, 2011-Ohio-2723, ¶ 20; *State v. Smorgala*, 50 Ohio St.3d 222, 223 (1990), *superseded by statute on other grounds as stated in State v. Mayl*, 2005-Ohio-4629, ¶ 54. The legislature decided in 1853 that defamation claims must be brought within one year from the date that the action accrued, and that action accrues on the date of publication, even when the injured party is unaware of the claim. The legislature knows how to include a discovery rule in statutes and has decided against its application in defamation claims.

{¶ 62} Ohio's appellate districts have consistently held that a defamation cause of action accrues at the time the defamatory words are spoken or published. The majority's decision today effectively overrules that precedent by changing when a defamation cause of action accrues. Relying on the judicially created discovery rule, the majority circumvents the statute of limitations for defamation and establishes its own accrual date for seeking relief for reputational injuries caused by the publication of defamatory words. Because the discovery rule is intended for narrow application in bodily-injury, medical malpractice, or actual-economic-loss cases, and because the General Assembly has not applied the discovery rule to defamation claims, I dissent from the majority's judgment and would reverse the judgment of the Twelfth District Court of Appeals.

_____

**WILKIN, J., dissenting.**

{¶ 63} I respectfully dissent from the majority's judgment affirming the Twelfth District Court of Appeals' judgment, which held that the discovery rule applies to libel actions when the publication of the defamatory statements was secretive, concealed, or otherwise inherently unknowable. However, for reasons that differ from the majority, I agree that this case should be remanded to the trial court.

{¶ 64} I dissent for the following reasons. First, the plain text of R.C. 2305.11(A) does not include a discovery rule for libel actions when the publication of the defamatory statements was secretive, concealed, or otherwise inherently unknowable. Therefore, this court should not read the discovery rule into the statute.

{¶ 65} Moreover, the majority's concern that "a tortfeasor could secretly publish defamatory statements," hide behind the one-year statute of limitations, go "public" with the defamatory statement after that one-year period has expired, and be shielded from liability, majority opinion, ¶ 19, is unfounded. If a tortfeasor kept a defamatory email a "secret" for more than one year and then released it "publicly," releasing that statement "publicly" (i.e., publishing it) creates a new cause of action with a new limitations period. Thus, the statute of limitations would not shield the tortfeasor from liability.

{¶ 66} The majority opinion also is contrary to well-established law that statutes of limitations are the legislature's prerogative and represent policy decisions that are not within the judiciary's authority. The majority supplants the legislature's intent and overrides the legislature's policy-making authority.

{¶ 67} Furthermore, even if this court were authorized to supplant the legislature's intent, I agree with the first dissenting opinion that our precedent establishes that the discovery rule does not apply to defamation actions involving secretive, concealed, or otherwise inherently unknowable publications. However, as discussed below, I do not agree with the first dissent's statement that libel causes of action accrue upon "'first publication.'" Dissenting opinion of Kennedy, C.J., ¶ 46, quoting *Miller v. Ohio Rehab. Serv. Comm.*, 86 Ohio Misc.2d 97, 100 (Ct. of Cl. 1997).

## I. The Plain Text of R.C. 2305.11(A) Does Not Include a Discovery Rule

{¶ 68} A thorough, objective, and plain-text review of R.C. 2305.11(A) reveals that the word "accrued" does not support the majority's holding that a libel

action involving a secretive, concealed, or otherwise inherently unknowable publication accrues when the defamed person discovers, or by the exercise of reasonable diligence should have discovered, the existence of the publication.[6] Instead, in accordance with this court's well-established caselaw that requires us to read statutes according to their plain meaning, the word "accrued," read in context, means that a libel action involving a secretive, concealed, or otherwise inherently unknowable publication accrues (i.e., comes into existence) upon publication of the defamatory statement; it does not accrue upon the plaintiff's discovery of the publication or upon the plaintiff's discovery that the defendant's publication caused an injury.

{¶ 69} R.C. 2305.11(A) states that "[a]n action for libel, slander, malicious prosecution, or false imprisonment . . . shall be commenced within one year after the cause of action accrued."

{¶ 70} The statute does not define the meaning of the word "accrued." "Absent legislative definition, it is left to the judiciary to determine when a cause" of action accrues. *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84 (1983), paragraph one of the syllabus. However, this statement from *O'Stricker* does not mean that courts may select an accrual date that is divorced from the language used in the applicable statute of limitations and decide when a cause of action accrues in a vacuum. *See Everhart v. Coshocton Cty. Mem. Hosp.*, 2023-Ohio-4670, ¶ 19 ("we do not read statutes in a vacuum"); *State ex rel. Figueroa v. Ohio Dept. of Commerce, Div. of Real Estate & Professional Licensing*, 2020-Ohio-4275, ¶ 8,

---

6. Although the majority holds that the discovery rule applies to libel actions when the publication of the libelous statements was secretive, concealed, or otherwise inherently unknowable, its holding does not clearly define the event that triggers the running of the statute of limitations. At one point, the majority states, "We conclude that [appellee, Thomas Weidman,] could not have known of the potential injury to his reputation until he became aware of the allegedly defamatory statements." Majority opinion at ¶ 18. At another point, the majority refers to the triggering event as the point when Weidman discovered "the alleged injury to his reputation." *Id.* at ¶ 20. To avoid these problems (and more), this court should follow the common-law accrual rule, as explained below.

quoting *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 2002-Ohio-4172, ¶ 19 ("a court must look 'beyond single phrases' and 'consider, in proper context, all words used by the General Assembly in drafting [the relevant statute] with a view to its place in the overall statutory scheme'" [bracketed text in original]); *see also Reading Co. v. Koons*, 271 U.S. 58, 61-62 (1926) (recognizing that the word "accrued" must be read "in the light of the general purposes of the statute and of its other provisions, and with due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought"). Instead, as with all cases involving the meaning of statutory language, we begin by examining the statutory text. *E.g.*, *State ex rel. DeMora v. LaRose*, 2022-Ohio-2173, ¶ 32.

**{¶ 71}** "When the statutory language is unambiguous, we apply it as written without resorting to rules of statutory interpretation or considerations of public policy." *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 2021-Ohio-2067, ¶ 13. "In other words, our review 'starts and stops' with the unambiguous statutory language." *Id.*, quoting *Johnson v. Montgomery*, 2017-Ohio-7445, ¶ 15. Statutory language is unambiguous when it "'express[es] plainly, clearly and distinctly, the sense of the law-making body.'" *State ex rel. Cordray v. Midway Motor Sales, Inc.*, 2009-Ohio-2610, ¶ 15, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. This court "may look beyond the plain statutory language only when a definitive meaning remains elusive despite *a thorough, objective examination of the language*." (Emphasis added.) *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 2019-Ohio-2851, ¶ 24, citing *Ohio Neighborhood Fin., Inc. v. Scott*, 2014-Ohio-2440, ¶ 23, citing *State v. Porterfield*, 2005-Ohio-3095, ¶ 11; *accord Everhart* at ¶ 16, quoting *Sears v. Weimer*, 143 Ohio St. 312, 316 (1944), quoting 37 Ohio Jur., Statutes, § 278, at 514-517 (1934) (""Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation. To interpret what is already plain

is not interpretation, but legislation, which is not the function of the courts, but of the general assembly. . . . An unambiguous statute is to be applied, not interpreted."' [Ellipsis added in *Sears.*]").

{¶ 72} Thus, to determine whether the discovery rule applies to a libel action involving a secretive, concealed, or otherwise inherently unknowable publication, we first consider the "'plain and ordinary meaning'" of the word "accrued."[7] *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, 2021-Ohio-2798, ¶ 21, quoting *Lingle v. State*, 2020-Ohio-6788, ¶ 15; *DeLong v. Campbell*, 157 Ohio St. 22, 23 (1952) (when a statute of limitations "begins to run depends upon the meaning of the word, 'accrued'"), *overruled on other grounds by Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111 (1983); *see Stewart v. Vivian*, 2017-Ohio-7526, ¶ 25 ("Terms that are undefined in a statute are accorded their common, everyday meaning."), citing R.C. 1.42. "To discern the plain meaning of statutory text, we consult not only lexical sources such as dictionaries, but also the meaning that the words have acquired when they are used in case law." *Rancho Cincinnati Rivers* at ¶ 21; *see State v. Wells*, 91 Ohio St.3d 32, 34 (2001) ("To determine the common, everyday meaning of a word, we have consistently used dictionary definitions.").

{¶ 73} Furthermore, when a legislative body "'"'"uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that [the legislative body] means to incorporate the established meaning of these terms.'"'"' (Ellipsis added in *Community for Creative Non-Violence.*) *Rancho Cincinnati Rivers* at ¶ 21, quoting *Nationwide Mut. Ins.*

---

7. The majority states that it is applying "the plain and ordinary meaning of" the word "accrued," majority opinion at ¶ 13, but it completely omits any plain-and-ordinary-meaning analysis of the word. Instead, it skips directly to the discovery rule without explaining how the word "accrued" plainly leads to the discovery rule. The majority thus "sidesteps the logically antecedent question whether the [statute] has room for such a rule," *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. __, __, 144 S.Ct. 1135, 1140 (2024) (Gorsuch, J., dissenting). To avoid confusion, this court should be consistent and follow the standard statutory analysis that it has used in previous cases.

*Co. v. Darden*, 503 U.S. 318, 322 (1992), quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989), quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329 (1981); *accord Rehberg v. Paulk*, 566 U.S. 356, 362 (2012), quoting *Pulliam v. Allen*, 466 U.S. 522, 529 (1984) ("'The starting point in our own analysis is the common law.'"); *Briscoe v. LaHue*, 460 U.S. 325, 330 (1983), quoting *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258 (1981) (courts presume that the legislative body was "'familiar with common-law principles . . . and that [it] likely intended these common-law principles to obtain, absent specific provisions to the contrary'"); *Willoughby Hills Dev. & Distrib., Inc. v. Testa*, 2018-Ohio-4488, ¶ 25, quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 320 (2012) ("'A statute that uses a common-law term, without defining it, adopts its common-law meaning.'" [Boldface omitted by *Willoughby Hills*.]); *see Willoughby Hills* at ¶ 27 ("The relevant statutes did not provide an answer to the question, so we looked to common-law understandings embodied in the case law and the Restatement."). Indeed, courts generally presume that the legislature enacts laws "against the backdrop of the common law." *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 589 U.S. 327, 335 (2020), citing *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013).

{¶ 74} Moreover, "[a] basic principle of statutory construction is that words in a statute should be interpreted based on their meaning at the time of enactment— to do otherwise would amount to judicial amendment outside of the legislative process." *Vossman v. AirNet Sys., Inc.*, 2020-Ohio-872, ¶ 17, citing *New Prime Inc. v. Oliveira*, 586 U.S. 105, 113 (2019). Likewise, this court presumes that "statutes . . . embrace the common law extant at their enactment." *Mann v. Northgate Investors, L.L.C.*, 2014-Ohio-455, ¶ 17. This rule means that we should read statutes "'"'in the light of and with reference to the rules and principles of the common law in force at the time of their enactment,'"'" and we should not read the statute in a way that is contrary to "'"'the settled rules of the common law,'"'" unless

32

the legislature has used language that ""'"clearly expresses or imports such intention."'"" (Emphasis deleted.) *Id.*, quoting *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 420 (1994), quoting *State ex rel. Morris v. Sullivan*, 81 Ohio St. 79 (1909), paragraph three of the syllabus; *accord Williams v. Spitzer Autoworld Canton, L.L.C.*, 2009-Ohio-3554, ¶ 17, quoting *Mandelbaum v. Mandelbaum*, 2009-Ohio-1222, ¶ 29, quoting *State ex rel. Hunt v. Fronizer*, 77 Ohio St. 7, 16 (1907) (courts will not presume that the legislature ""'"intended to abrogate a settled rule of the common law unless the language used in a statute clearly supports such intention"'""").

{¶ 75} Applying these well-established principles leads to one conclusion: A defamation action involving a secretive, concealed, or otherwise inherently unknowable publication accrues (i.e., comes into existence) upon publication of the defamatory statement, not upon the plaintiff's discovery of the publication or upon the plaintiff's discovery that the publication caused an injury.

### A. The Plain Meaning of "Accrued"

{¶ 76} Dictionary and caselaw definitions, along with the common law, demonstrate that when the General Assembly enacted the Code of Civil Procedure of the State of Ohio in 1853, which provided a statute of limitations for civil actions for libel and slander, 51 Ohio Laws 57, 59, a defamation cause of action accrued upon publication, not upon the plaintiff's discovery of the publication or upon the plaintiff's discovery that the publication caused an injury, even if the publication occurred in a secretive, concealed, or otherwise inherently unknowable manner.

{¶ 77} Since the 19th century, both dictionaries and caselaw have defined the word "accrued" to mark the point in time when a cause of action "'comes into existence.'" *Gabelli v. Secs. & Exchange Comm.*, 568 U.S. 442, 448 (2013), quoting *United States v. Lindsay*, 346 U.S. 568, 569 (1954) (tracing the history of the dictionary and caselaw definitions of the word "accrued" and stating that the word has retained the same meaning since the 19th century: "'In common parlance

a right accrues when it comes into existence'"); *Reading Co.*, 271 U.S. at 61 (noting that "accrued" relates to "what point of time the cause of action has come into existence, and consequently at what point of time the statute of limitations begins to run"); *State ex rel. Estate of McKenney v. Indus. Comm.*, 2006-Ohio-3562, ¶ 8, quoting *State ex rel. Bowman v. Columbiana Cty. Bd. of Commrs.*, 77 Ohio St.3d 398, 400 (1997), and *Webster's Third New International Dictionary* (1986) (the "'usual, normal, or customary meaning'" of "accrued" is "'to come into existence as an enforceable claim: vest as a right'"); *DeLong*, 157 Ohio St. at 24, quoting *Black's Law Dictionary* (2d Ed. 1910) ("accrue" "'means to arise, to happen, to come into force or existence'"); *Fee's Admr. v. Fee*, 10 Ohio 469, 471 (1841) ("The plea of the statute goes to the existence of the cause of action, and not to the knowledge of it.").

{¶ 78} And since 1831, this court has held that a general tort cause of action accrues (i.e., comes into existence) "from the time of the injury, that being the cause of action, and not from the time of damage or discovery of the injury." *Kerns v. Schoonmaker*, 4 Ohio 331, 334 (1831); *see Rancho Cincinnati Rivers*, 2021-Ohio-2798, at ¶ 21 ("To discern the plain meaning of statutory text, we consult . . . the meaning that the words have acquired when they are used in case law."); *DeLong* at 27 ("The cause accrues when the negligently-caused injury is inflicted."). Later cases refined this rule to mean "that a cause of action exists from the time the wrongful act is committed." *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 2011-Ohio-1961, ¶ 13, citing *O'Stricker*, 4 Ohio St.3d at 87; *see id.*, quoting *Kerns* at syllabus ("'Statute of limitations commences to run so soon as the injurious act complained of is perpetrated, although the actual injury is subsequent, and could not immediately operate.'"); *accord LGR Realty, Inc. v. Frank & London Ins. Agency*, 2018-Ohio-334, ¶ 14 (also quoting *Kerns*); *see also Wyler v. Tripi*, 25 Ohio St.2d 164, 166 (1971) ("It is generally stated that a cause of action accrues when the wrongful act complained of is committed, and not as of the date the damage is

discovered or reasonably should have been discovered."), citing 34 Ohio Jur.2d, Limitation of Actions, § 58, at 536 (1958), and 34 Am.Jur., Limitation of Actions, § 115, at 94 (1941), *overruled on other grounds by Oliver*, 5 Ohio St.3d 111.

{¶ 79} Furthermore, absent fraud or mistake, this court did not apply the discovery rule to a cause of action until 1972. *See Melnyk v. Cleveland Clinic*, 32 Ohio St.2d 198 (1972), syllabus ("Where a metallic forceps and a nonabsorbent sponge are negligently left inside a patient's body during surgery, the running of the statute of limitation governing a claim therefor is tolled until the patient discovers, or by the exercise of reasonable diligence should have discovered, the negligent act."); *see generally Ormsby v. Longworth*, 11 Ohio St. 653, 667-668 (1860) (applying the discovery rule to a deed-reformation case based upon mistake and likening mistake to fraud). As noted above, the General Assembly enacted the statute of limitations for defamation actions in 1853, more than 100 years before *Melnyk* was decided. Thus, it would be legislating from the bench to state that at the time of the enactment of the defamation statute of limitations, the word "accrued" meant that a defamation cause of action accrued at the time a person discovered, or by the exercise of reasonable diligence should have discovered, the wrongful act. Rather, as explained above, this court's caselaw plainly indicates that at the time of the statute's 1853 enactment, the word "accrued" meant the time when a cause of action came into existence and not the time when a person discovered the existence of a cause of action. *Fee's Admr.* at 471 ("The plea of the statute goes to the existence of the cause of action, and not to the knowledge of it."). And this court held that general tort causes of action accrued at "the time of the injury" (i.e., at the time of the wrongful act), not at "the time of damage or discovery of the injury." *Kerns* at 334.

{¶ 80} However, some tort actions are subject to "distinctive" accrual rules. For example, in *Wallace v. Kato*, the United States Supreme Court stated the traditional tort-accrual rule, but it did not apply that rule to the cause of action at

issue in that case, i.e., false imprisonment. 549 U.S. 384, 391 (2007), quoting 1 Corman, *Limitation of Actions*, § 7.4.1, at 526-527 (1991) ("'Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitations commences to run'" at the time of the wrongful act and "'[t]he cause of action accrues even though the full extent of the injury is not then known or predictable.'" [Ellipsis in original.]). Instead, it noted that false imprisonment "is subject to a distinctive rule" in determining when the cause of action accrues. *Id.* at 389. The Court looked to the common law and the Restatement of the Law 2d, Torts, to locate that "distinctive rule" and to define when the false-imprisonment cause of action accrues. *Wallace* at 389, quoting 2 Wood, *Limitation of Actions*, § 187d(4), at 878 (4th Rev.Ed. 1916) ("'Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.'"); *id.*, citing 4 Restatement of the Law 2d, Torts, § 899, Comment c (1977), and Underhill, *Principles of Law of Torts* 202 (1881).

**{¶ 81}** Moreover, this court previously consulted the Restatement of the Law 2d, Torts, for guidance in deciding when a malicious-prosecution cause of action accrues (and determined that it accrues when "criminal proceedings are terminated in favor of the accused"), *Froehlich v. Ohio Dept. of Mental Health*, 2007-Ohio-4161, ¶ 13-19, citing 3 Restatement of the Law 2d, Torts, § 659 (1977), and in resolving whether a "grievance complaint filed with the local bar association constituted a publication," *Hecht v. Levin*, 66 Ohio St.3d 458, 460 (1993), citing 3 Restatement of the Law 2d, Torts, § 577 (1965).

**{¶ 82}** Notably, R.C. 2305.11(A) lists false imprisonment and malicious prosecution—two causes of action that have distinctive accrual rules—in the same clause as libel and slander. By listing libel and slander in the same clause as false imprisonment and malicious prosecution, the context of the statute indicates that libel and slander likewise have distinctive accrual rules. *See Figueroa*, 2020-Ohio-4275, at ¶ 8, quoting *D.A.B.E.*, 2002-Ohio-4172, at ¶ 19 ("a court must look

'beyond single phrases' and 'consider, in proper context, all words used by the General Assembly in drafting [the relevant statute] with a view to its place in the overall statutory scheme'" [bracketed text in original]). Consequently, the statute indicates that those four causes of action (i.e., libel, slander, malicious prosecution, and false imprisonment) are subject to distinctive accrual rules, not the wrongful-act accrual rule that this court has applied to general tort causes of action.

{¶ 83} The broader context of R.C. 2305.11(A) further shows that the causes of action listed in that provision are subject to distinctive rules, not the general tort-accrual rule. R.C. 2305.11(A) reads in its entirety as follows:

An action for libel, slander, malicious prosecution, or false imprisonment, an action for malpractice other than an action upon a medical, dental, optometric, or chiropractic claim, an action for legal malpractice against an attorney or a law firm or legal professional association, or an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued, provided that an action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation shall be commenced within two years after the cause of action accrued.

{¶ 84} Under the common law, each cause of action set forth in R.C. 2305.11(A) had a distinctive accrual rule, not the wrongful-act accrual rule. As indicated above, malicious-prosecution causes of action accrued when "criminal proceedings [were] terminated in favor of the accused." *Froehlich*, 2007-Ohio-4161, at ¶ 13-19, citing 3 Restatement, § 659. False-imprisonment causes of action accrued "'when the alleged false imprisonment end[ed].'" *Wallace*, 549 U.S. at

389, quoting 2 Wood at 878. Legal-malpractice causes of action accrued "when the attorney-client relationship finally terminate[d]." *Keaton Co. v. Kolby*, 27 Ohio St.2d 234 (1971), syllabus, *overruled by Skidmore & Hall v. Rottman*, 5 Ohio St.3d 210 (1983). Causes of action based on a penalty or a forfeiture statute accrued "when the violation of the statute occur[red]." *Squire v. Grdn. Trust Co.*, 79 Ohio App. 371, 383 (8th Dist. 1947).

**{¶ 85}** Medical-malpractice actions formerly were listed in R.C. 2305.11 as well. *See Wyler*, 25 Ohio St.2d at 165 (citing former R.C. 2305.11 as stating the statute of limitations that applied to medical-malpractice actions). Under the common law, medical-malpractice causes of action accrued "when the physician-patient relationship finally terminate[d]." *Id.* at syllabus.

**{¶ 86}** Thus, under the common law, the causes of action discussed above did not accrue at the time of the wrongful act. The context of the entire statute therefore indicates that at common law, each cause of action had a distinctive accrual rule, not the wrongful-act or traditional tort-accrual rule.

**{¶ 87}** For all these reasons, this court should conclude that the causes of action listed in R.C. 2305.11(A)—including libel and slander—are subject to distinctive accrual rules. Additionally, in *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 179 (1989), this court stated that "[g]eneral tort claims, including those for negligence, are governed by R.C. 2305.09(D)," which suggests that this court should not use the rules for "general tort claims" in determining when a defamation cause of action accrues. *See generally* Dobbs, *The Law of Torts*, 1115 (2000) (defamation is a "dignitary" tort); Allen, *Twibel Retweeted: Twitter Libel and the Single Publication Rule*, 15 J.High Tech.L. 63, 67 (2014) ("Defamation is a dignitary tort with ancient roots . . . ."). I therefore question whether in a defamation action involving a secretive, concealed, or otherwise inherently unknowable publication, the court should be setting a precedent that implies that the wrongful-

act accrual rule applies to defamation causes of action. *See* majority opinion at ¶ 14, citing *Norgard v. Brush Wellman, Inc.*, 2002-Ohio-2007, ¶ 8.[8]

{¶ 88} Moreover, as stated above, this court previously consulted the Restatement to determine the accrual rule for one of the causes of action listed in the same clause as libel and slander—malicious prosecution—*Froehlich*, 2007-Ohio-4161, at ¶ 13-19, and to decide a publication issue in a defamation cause of action, *Hecht*, 66 Ohio St.3d at 460; *see also Wallace*, 549 U.S. at 389 (consulting the Restatement of the Law 2d, Torts, to define when a false-imprisonment cause of action accrues). To be consistent, the court likewise should consult the Restatement in this case.

{¶ 89} The Restatement and "textbook tort law," *Nassar*, 570 U.S. at 347, citing Keeton, Dobbs, Keeton & Owen, *Prosser and Keeton on the Law of Torts*, § 41, at 265 (5th Ed. 1984), indicate that defamation causes of action accrue upon publication of a defamatory statement. Dobbs, § 421, at 1187 ("Publication is not only an element of the cause of action; it is also the trigger for the statute of limitations."); 4 Lindahl, *Modern Tort Law: Liability and Litigation*, § 35:69, at 578 (2023) ("A defamation action ordinarily accrues when the defamatory matter is published."); 3 Restatement, § 577A, Comment a ("It is the general rule that each communication of the same defamatory matter by the same defamer, whether to a

---

8. Coincidentally, the wrongful act in a defamation action is "'the publication of a false and defamatory statement concerning another person without lawful justification.'" *Black's Law Dictionary* (11th Ed. 2019), quoting R.F.V. Heuston, *Salmond on the Law of Torts* 138 (17th Ed. 1977). However, to be consistent with the statutory context, the common law, and the weight of scholarly authority, this court should use the distinctive, common-law accrual rule for defamation actions as discussed in this opinion, i.e., a defamation cause of action accrues upon publication, with publication being a term of art that does not mean first publication. Moreover, adopting the Restatement's common-law rule would give guidance to courts and attorneys who may have to grapple with complicated issues surrounding internet, social-media, and other publications. If it consulted the Restatement in this case, the court would be indicating to Ohio courts and attorneys that they likewise should consult the Restatement to help resolve issues that may arise in defamation actions. Using the wrongful-act accrual rule or the discovery accrual rule does not provide courts and attorneys with this same level of guidance.

new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises."); *see also TransUnion, L.L.C. v. Ramirez*, 594 U.S. 413, 432 (2021), quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13 (1990) ("a person is injured when a defamatory statement 'that would subject him to hatred, contempt, or ridicule' is published to a third party"); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984) ("The tort of libel is generally held to occur wherever the offending material is circulated."), citing 3 Restatement, § 577A, Comment a; *Jackson v. Columbus*, 2008-Ohio-1041, ¶ 9, quoting *A & B– Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7 (1995) ("defamation *occurs* when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession'" [emphasis added]); 54 C.J.S., Limitations of Actions, § 228, at 279-280 (2020) ("As a general rule, a cause of action for libel or slander accrues, so as to start the running of limitations, at the time of publication and not on the date of discovery of the wrong, or when the alleged injury occurred. Thus, the statute of limitations on defamation actions generally begins to run when the defamatory statement is published." [Footnotes omitted.]).

{¶ 90} Moreover, the common law does not distinguish between secretive, concealed, or otherwise inherently unknowable publications and nonsecretive, unconcealed, or otherwise inherently knowable publications. In *Hecht*, we stated:

> "Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." 3 Restatement of the Law 2d, Torts (1965), Section 577(1). *Any* act by which the defamatory matter is communicated to a third party constitutes publication. *Id.* at Comment *a*. Also, it

> is sufficient that the defamatory matter is communicated to one person only, even though that person is enjoined to secrecy. *See id.* at Comment *b*. Ohio law recognizes that publication of defamation consists in communicating it to a person or persons other than the person libeled. *Hahn v. Kotten*[, 43 Ohio St.2d 237, 243 (1975)].

(Emphasis in original.) *Hecht* at 460.

{¶ 91} Thus, "[a]ny act by which the defamatory matter is communicated to a third party constitutes publication." (Emphasis in original.) *Id.* The word "'any' has an expansive meaning." *United States v. Gonzales*, 520 U.S. 1, 5 (1997). It means "'one or some indiscriminately of whatever kind.'" *State ex rel. Purdy v. Clermont Cty. Bd. of Elections*, 77 Ohio St.3d 338, 340 (1997), quoting *Webster's Third New International Dictionary* (1971). "'Any' is often used as meaning 'all.'" (Citation omitted.) *Wachendorf v. Shaver*, 149 Ohio St. 231, 240 (1948); *accord State v. Wells*, 146 Ohio St. 131, 137 (1945) ("'*Any* person' means *every* person . . . ." [Emphasis in original.]).

{¶ 92} Consequently, this court's precedent recognizes that publication means any, all, and every act by which the defamatory matter is communicated to a third party, even if that act occurs in a secretive, concealed, or otherwise inherently unknowable manner, such as a "grievance complaint filed with the local bar association," *Hecht*, 66 Ohio St.3d at 460, or a private email shared with at least one other person.

{¶ 93} Accordingly, under well-settled common law, a cause of action for defamation accrues (i.e., comes into existence) upon *any* publication (i.e., "[a]ny act by which the defamatory matter is communicated to a third party" [emphasis in original], *id.*) of a defamatory statement, including one that is communicated in a secretive, concealed, or otherwise inherently unknowable manner. The common law does not support the conclusion that a defamation cause of action involving a

secretive, concealed, or otherwise inherently unknowable publication accrues when the defamed person discovers, or by the exercise of reasonable diligence should have discovered, that a secretive, concealed, or otherwise inherently unknowable defamatory statement about that person has been published.

{¶ 94} Additionally, any common-law discovery rule that may have existed at the time of the 1853 enactment of the statute of limitations for civil actions for libel and slander was limited to fraud cases. *See Gabelli*, 568 U.S. at 449, quoting *Merck & Co., Inc. v. Reynolds*, 559 U.S 633, 644 (2010) (explaining that the discovery rule "arose" in "fraud cases as an 'exception' to the standard rule, based on the recognition that 'something different was needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even *knowing* that he or she has been defrauded'" [emphasis added in *Merck & Co.*]); *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946), quoting *Bailey v. Glover*, 88 U.S. 342, 348 (1874) ("where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered'"); *Bailey* at 347 ("when the object of the suit is to obtain relief against a fraud, the bar of the statute does not commence to run until the fraud is discovered or becomes known to the party injured by it").[9] Thus, at the time of the statute's enactment, the common law did not recognize a discovery rule for any defamation actions, even one that involved a secretive, concealed, or otherwise inherently unknowable publication.

---

9. Although Weidman argued in his memorandum in opposition to appellant Christopher Hildebrant's summary-judgment motion that Hildebrant engaged in "fraud" and sought to toll the statute of limitations based on "the doctrine of fraudulent concealment," Weidman's complaint does not allege fraud.

{¶ 95} Therefore, under the common law, a defamation cause of action came into existence upon publication of the defamatory statement.[10] Nothing in our caselaw or the common law suggests that at the time of the statute's enactment, a defamation cause of action—even one involving a secretive, concealed, or otherwise inherently unknowable publication—accrued (i.e., came into existence) when the defamed person discovered, or by the exercise of reasonable diligence should have discovered, the secretive, concealed, or otherwise inherently unknowable publication. Importantly, R.C. 2305.11(A) does not distinguish between defamation causes of action involving a secretive, concealed, or otherwise inherently unknowable publication and all other defamation causes of action. Instead, the statute refers to libel or slander without modification. For this reason, the plain text of R.C. 2305.11(A) does not indicate that the discovery rule applies to a defamation cause of action involving a secretive, concealed, or otherwise inherently unknowable publication. Because R.C. 2305.11(A)'s text is plain, this court must apply it as written.

### B. R.C. 2305.11(A)'s Language Does Not Express a Clear Intent to Depart from the Settled Common-Law Rule

{¶ 96} Courts should not read statutes in a way that is contrary to "'"the settled rules of the common law,"'" unless the legislature has used language that "'"clearly expresses or imports such intention."'" (Emphasis deleted.) *Mann*, 2014-Ohio-455, at ¶ 17, quoting, *Shump*, 71 Ohio St.3d at 420, quoting *Morris*, 81 Ohio St. 79, at paragraph three of the syllabus. In other words, courts will not presume that the legislature "'"intended to abrogate a settled rule of the common law unless the language used in a statute clearly supports such intention."'"

---

10. I do not agree with the majority opinion's assertion that we must distinguish between libel and slander to decide this case. Section 577A of the Restatement of the Law 2d, Torts, does not distinguish between the two, and the majority's distinction between the two causes of action serves only to cause confusion.

*Williams*, 2009-Ohio-3554, at ¶ 17, quoting *Mandelbaum*, 2009-Ohio-1222, at ¶ 29, quoting *Hunt*, 77 Ohio St. at 16.

{¶ 97} Nothing in the text of R.C. 2305.11(A) indicates that the legislature clearly intended to abrogate a settled rule of the common law and that it instead intended to apply the discovery rule to a defamation cause of action involving a secretive, concealed, or otherwise inherently unknowable publication. The majority's holding that a defamation cause of action involving a secretive, concealed, or otherwise inherently unknowable publication accrues when the defamed person discovers, or by the exercise of reasonable diligence should have discovered, the existence of the publication, reads into the statute not only the discovery rule but also the words "secretive, concealed, or otherwise inherently unknowable," despite this court's "clear duty not to alter the language of a statute by adding or removing words," *State v. Jeffries*, 2020-Ohio-1539, ¶ 18. The language in R.C. 2305.11(A) does not distinguish between secretive, concealed, or otherwise inherently unknowable libel or slander and nonsecretive, unconcealed, or otherwise inherently knowable libel or slander.

{¶ 98} Therefore, this court should not alter the plain language of R.C. 2305.11(A) by adding a discovery rule for a defamation cause of action involving a secretive, concealed, or otherwise inherently unknowable publication. *See Pratte v. Stewart*, 2010-Ohio-1860, ¶ 45, quoting *Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless,* 2007-Ohio-2203, ¶ 12 ("'A court is neither to insert words that were not used by the legislature nor to delete words that were used.'"); *id*. at ¶ 58 ("The General Assembly did not include a tolling provision for persons with repressed memories of childhood sexual abuse, and it is not our province to add such a provision where one plainly does not exist."); *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019), quoting *TRW, Inc. v. Andrews*, 534 U.S. 19, 37 (2001) (Scalia, J., concurring in the judgment) (an "expansive approach to the discovery rule is a 'bad wine of recent vintage'"); *Rotkiske* at 14, quoting Scalia & Garner at 94 ("It is a

fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" [Bracketed text in original.]); *Fronce v. Nichols*, 12 Ohio C.D. 472, 476 (Cir.Ct. 1901) ("Judicial construction that reads anything into, or out of, [the] statute, is judicial legislation.").

## II. R.C. 2305.11(A) Does Not Indicate that Defamation Causes of Action Accrue upon First Publication

{¶ 99} The majority reasons that "[p]rivate email communications used to defame someone are inherently not discoverable by the defamed person until the communication is disclosed publicly." Majority opinion at ¶ 20. The majority and the first dissent appear to presume that even when a defendant publishes a defamatory statement to different groups of people at different times, a plaintiff has one cause of action and it accrues at the time of the first publication, which is the rule that the trial court and the Twelfth District applied.[11] However, this court has

---

11. Although neither party explicitly argued that this "first-publication rule" is incorrect, this court is "certainly not limited to the analyses presented by the parties or the analysis of the lower court in resolving an issue before the court, as this court must apply correct legal principles to resolve legal issues," *State v. Gwynne*, 2023-Ohio-3851, ¶ 33 (Fischer, J., concurring in judgment only); *see also Warner Chappell Music*, 601 U.S. at __, 144 S.Ct. at 1141 (Gorsuch, J., dissenting) ("Nothing requires us to play along with these particular parties and expound on the details of a rule of law that they may assume but very likely does not exist.").

I further note that this first-publication rule appears to be a misinterpretation of the "single-publication rule" contained in the Restatement of the Law 2d, Torts. The single-publication rule states as follows:

> (1) Except as stated in Subsections (2) and (3), each of several communications to a third person by the same defamer is a separate publication.
> (2) A single communication heard at the same time by two or more third persons is a single publication.
> (3) Any one edition of a book or newspaper, or any one radio or television broadcast, exhibition of a motion picture or similar aggregate communication is a single publication.
> (4) As to any single publication,
> (a) only one action for damages can be maintained;
> (b) all damages suffered in all jurisdictions can be recovered in the one action; and

never held that defamation causes of action accrue upon the first publication of the defamatory statement. *See Haines v. Welling*, 7 Ohio 253, 256 (1835) (noting that a defendant could be liable for slander for repeating a defamatory statement that originated from another person, i.e., "whether the defendant be the author, or whether he be merely the propagator of a slander originating with another"); *see also Anderson v. WBNS-TV, Inc.*, 2019-Ohio-5196, ¶ 11-12 (referring to defamatory "publications"); *Wartenbe v. Sternberger*, 1890 WL 1967, *2 (Ohio Jan. 21, 1890) ("The responsibility for written, or printed, defamation does not stop with its first publication."), citing 2 Addison, *A Treatise on the Law of Torts*, § 1140, at 364 (Wood Ed. 1881).

{¶ 100} Additionally, to state that a defamation cause of action accrues upon the first publication of the defamatory statement would be to read the word "first" into R.C. 2305.11(A), as in "first accrued." *Compare Gabelli*, 568 U.S. at 447-448, quoting 28 U.S.C. 2462 ("'an action . . . for the enforcement of any civil fine, penalty, or forfeiture . . . shall not be entertained unless commenced within five years from the date when the claim *first* accrued'" [ellipses in original; emphasis added]).

---

(c) a judgment for or against the plaintiff upon the merits of any action for damages bars any other action for damages between the same parties in all jurisdictions.

3 Restatement, § 577A, at 208.  The single-publication rule

is applied in cases where the same communication is heard at the same time by two or more persons.  In order to avoid multiplicity of actions and undue harassment of the defendant by repeated suits by new individuals, as well as excessive damages that might have been recovered in numerous separate suits, the communication to the entire group is treated as one publication, giving rise to only one cause of action.

*Id.* at Comment b.

Thus, the plain text of the Restatement shows that the "single" publication rule clashes with the "first" publication rule that the trial court and the court of appeals applied.

**{¶ 101}** Furthermore, other authorities recognize that "[e]ach communication of a defamatory statement to a third person constitutes a new publication and gives rise to a separate cause of action," 4 Lindahl, § 35:12, at 480, and that "each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises," 3 Restatement, § 577A, Comment a. Thus, the majority's concern that "a tortfeasor could conceal that publication until the statute-of-limitations period had expired," majority opinion at ¶ 19, is unfounded. If a tortfeasor keeps a defamatory statement secret, concealed, or otherwise inherently unknowable to the plaintiff for more than one year and then publishes it again after one year, that publication gives rise to a new limitations period (i.e., each publication gives rise to a new cause of action). Similar statements that appear throughout the majority opinion likewise are unsupported. *See id.* at ¶ 20 ("Private email communications used to defame someone are inherently not discoverable by the defamed person until the communication is disclosed publicly."); *id.* at ¶ 24 ("A tortfeasor ought not be allowed to privately libel another person and benefit from the ability to keep that libelous statement a secret."). Additionally, if a tortfeasor "privately libel[s] another person" and keeps the defamatory statement "a secret," *id.*, then unless that private libel is published to a third party, the action would not be justiciable,[12] *TransUnion*, 594 U.S. at 434 (discussing the requirement of concrete harm to have standing to sue and stating that "if someone wrote a defamatory letter and then stored it in her desk drawer," the stored letter "does not harm anyone, no matter how insulting the letter is").

---

12. The majority opinion also raises questions regarding the meaning of private libel and secret. Is a secret, private libel a written, defamatory statement that a person publishes to only one other person, or is it a written, defamatory statement that the defamer locks in a drawer? Presumably, the majority means the former, but the opinion is not clear.

**{¶ 102}** If the majority evaluates this case without presuming that defamation causes of action accrue upon first publication, then it will recognize that each new publication gives rise to a new cause of action, which starts a new limitations period. The reason for this rule makes eminent sense. For practical purposes, a person who is defamed "in secret"[13] and who learns about it ten years later may not suffer the type of harm that would warrant court intervention. For example, in this case, if Hildebrant had sent only the one email to Stanford Roberts in 2011, and then, in 2020, Roberts told Weidman about that email, would this case exist? Although the answer to that question is unknowable, logic would seem to indicate that a person is not going to take the time or spend the money to litigate a defamation action that involves a solitary and secretive, concealed, or otherwise inherently unknowable publication (e.g., one email sent to one other person and to no one else). However, applying the discovery rule to "secretive, concealed, or otherwise inherently unknowable" defamation causes of action would allow that person to seek redress if that person chose to do so. The Restatement's general rule that each publication of a defamatory statement (even those publications that are secretive, concealed, or otherwise inherently unknowable) gives rise to a new cause of action thus may serve to prevent courts from becoming arbiters of trifling disputes.[14] *See Ruther v. Kaiser*, 2012-Ohio-5686, ¶ 13 ("the legislature determines what injuries are recognized and what remedies are available"); *id.* at ¶ 14 ("the General Assembly has the right to determine what causes of action the law will recognize and to alter the common law by abolishing the action, by defining the

---

13. A secret is defined as "[s]omething that is kept from the knowledge of others or shared only with those concerned; something that is studiously concealed." *Black's* (11th Ed.).

14. I do not mean to suggest that Weidman's case involves a trifling dispute. Instead, this statement above indicates only that the majority's discovery rule also will apply outside the specific facts of Weidman's case. Additionally, in today's modern society, how much "secretive, concealed, or otherwise inherently unknowable" defamation might be occurring in emails, text messages, and social media? Applying the discovery rule to these types of defamation actions could create an avalanche of "secretive, concealed, or otherwise inherently unknowable" defamation actions.

action, or by placing a time limit after which an injury is no longer a legal injury"); *see also Black's* (11th Ed.) (stating that the maxim de minimis non curat lex means "[t]he law does not concern itself with trifles"); *Lathan v. Ohio State Corr. Reception Ctr.*, 2016-Ohio-3348, ¶ 11 (10th Dist.) (stating that the maxim de minimis non curat lex places "outside the scope of legal relief the sorts of 'injuries' that are so small that they must be accepted as the price of living in society" [cleaned up]).

**{¶ 103}** The more times that a secretive, concealed, or otherwise inherently unknowable defamatory statement is published, the more harmful it becomes—and the more likely that a defamed person will discover the publication within the one-year statute of limitations. Hence, the Restatement's rule that each publication gives rise to a new cause of action, 3 Restatement, § 577A, Comment a, essentially operates as a built-in discovery rule—the more times that a secretive, concealed, or otherwise inherently unknowable statement is published, the more likely the defamed person will discover the existence of the defamatory statement within the limitations period.

**{¶ 104}** Additionally, the majority opinion draws a distinction between a secretive, concealed, or otherwise inherently unknowable publication of a defamatory statement and all other publications, which is contrary to this court's precedent and the Restatement. As noted above, in *Hecht*, this court held that a "grievance complaint filed with the local bar association constituted a publication." *Hecht*, 66 Ohio St.3d at 460. And the court rejected the notion that "[f]or the purposes of defamation, 'publication'" requires "widespread dissemination."[15] *Id.* This court stated: "We discern no reason to disturb the settled law of defamation

---

15. For this reason, I do not agree that the court should distinguish between secretive, concealed, or otherwise inherently unknowable publications of defamatory statements and defamatory statements that "are published in the media or otherwise offered in the marketplace of ideas," majority opinion at ¶ 22. The majority's statement is contrary to *Hecht*, and the majority's statement will cause confusion—e.g., when is a defamatory statement "offered in the marketplace of ideas"?

and create an exception to the definition of 'publication' for confidential communications to a bar association." *Id.* Yet in this case, the majority decides to disturb well-established law regarding the accrual date for defamation causes of action and fails to consult the common-law principles contained in the Restatement, as this court has done in other cases. *E.g.*, *Carter v. Reese*, 2016-Ohio-5569, ¶ 18 (consulting the Restatement of the Law 2d, Torts, for the common-law principles of a bystander's duty to aid or protect another); *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d 284, 293 (1997) (referring to the Restatement of the Law 2d, Torts, as stating "the common-law rule" regarding the duty element of a cause of action for negligence); *Shump*, 71 Ohio St.3d at 419-420 (looking to the Restatement of the Law 2d, Torts, in part, to determine common-law principles in a landlord-tenant case); *Embers Supper Club, Inc. v. Scripps-Howard Broadcasting Co.*, 9 Ohio St.3d 22, 25 (1984) (examining the Restatement of the Law 2d, Torts, to determine whether a publication was subject to "common-law privilege"), *modified on other grounds*, *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176 (1987) (plurality opinion); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) (citing 3 Restatement, § 563, Comment c, and Keeton, Dobbs, Keeton & Owen at 776, to support a statement of "[t]he common law of libel"); *Diller v. Diller*, 2023-Ohio-1508, ¶ 4 (Stewart, J., dissenting) (referring to 1 Restatement of the Law 3d, Property: Wills & Other Donative Transfers, § 1.2, Comment a (1999), as stating the "common-law rule").

{¶ 105} More than 70 years ago, this court recognized the danger of applying the discovery rule to defamation causes of action, stating: "[I]f the statute of limitations as to libel or slander did not begin to run until knowledge was had by the one injured by the libel or slander it might result that an action therefor could be brought an indefinite number of years after the libel or slander occurred." *DeLong*, 157 Ohio St. at 28; *see generally Gabelli*, 568 U.S. at 449, quoting *Wood v. Carpenter,* 101 U.S. 135, 139 (1879) (stating that statutes of limitations are

"'vital to the welfare of society'"); *Gabelli* at 449, quoting *Wilson v. Garcia*, 471 U.S. 261, 271 (1985) (recognizing that "'even wrongdoers are entitled to assume that their sins may be forgotten'"). Holding that the discovery rule applies to defamation causes of action involving a secretive, concealed, or otherwise inherently unknowable publication is legislating from the bench and will create infinite liability. Under the majority's decision, a person who discovers that another person defamed that person in an email published to one other person years earlier could bring a lawsuit years later.[16] I do not believe that the legislature intended to allow our courts to be used to litigate these types of disputes. *See Ruther*, 2012-Ohio-5686, at ¶ 13-14 (stating that the legislature has the right to determine what causes of action the law will recognize).

{¶ 106} I readily agree that the facts alleged in Weidman's case are egregious. However, if this court applies the discovery rule to Weidman's case, it also will apply to *all* defamation causes of action involving a secretive, concealed, or otherwise inherently unknowable publication and not simply to cases with an allegedly outrageous set of facts. This court should not allow a purportedly egregious set of facts to upset well-settled law. *See Brandt v. Pompa*, 2022-Ohio-4525, ¶ 73 (Kennedy, Fischer, and DeWine, JJ., dissenting) ("Bad facts make bad law . . . ."); *State v. Bortree*, 2022-Ohio-3890, ¶ 20 (even when a case involves a "particularly heinous set of facts," this court will not "rewrite the statute"); *Bank of Hartford Cty. v. Waterman*, 26 Conn. 324, 331 (1857), quoting *E. India Co. v. Paul*, 1 Eng.L. & Eq.R. 44, 48 (1849) ("'hard cases must not make bad law'").

{¶ 107} The majority's assertion that applying the discovery rule in cases like Weidman's is necessary to achieve justice, majority opinion at ¶ 19, is not wholly unfounded. However, the legislature, not this court, carries the

---

16. As Hildebrant notes in his reply brief, applying the discovery rule to secretive, concealed, or otherwise inherently unknowable defamation will cause Ohioans to "live in perpetual fear that an ill-chosen comment about a neighbor, made decades ago, will give rise to a lawsuit."

responsibility "to decide how 'humane' legislation should be—or (to put the point less tendentiously) to strike the balance between remediation of all injuries and a policy of repose," *TRW*, 534 U.S. at 38 (Scalia, J., concurring in the judgment); *id.*, quoting *Amy v. Watertown*, 130 U.S. 320, 323-324 (1889) ("'[T]he cases in which [the statute of limitations may be suspended by causes not mentioned in the statute itself] are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it.'" [Bracketed text in original.]).

### III.  The Majority Opinion Supplants Legislative Intent

**{¶ 108}** The majority opinion also violates the principle that statutes of limitations are the legislature's prerogative.  Courts have long recognized that "[t]he existence and duration of a statute of limitations for a cause of action constitutes an issue of public policy for resolution by the legislative branch of government as a matter of substantive law." *Erwin v. Bryan*, 2010-Ohio-2202, ¶ 29; *accord Rotkiske*, 589 U.S. at 14-15, quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 463-464 (1975) ("The length of a limitations period 'reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.' . . . It is Congress, not this court, that balances those interests.  We simply enforce the value judgments made by Congress."); *United States v. Kubrick*, 444 U.S. 111, 117 (1979), quoting *RR. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 349 (1944) (stating that statutes of limitations "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them'").  Provisions that delay the running of a statute of limitations, such as the discovery rule, are a "legislative prerogative," *Pratte*, 2010-Ohio-1860, at ¶ 49.  Thus, "it is not our job as members

of the judicial branch to overreach and invade the province of the General Assembly." *Brandt* at ¶ 73 (Kennedy, Fischer, DeWine, JJ., dissenting).

{¶ 109} This court should not disregard the plain statutory text that the legislature has chosen simply because it believes that the legislature may have intended to add a discovery rule for defamation causes of action involving secretive, concealed, or otherwise inherently unknowable publications or because it believes that applying the discovery rule will be more "consonant with the demands of justice and the dictates of ethics," *Oliver*, 5 Ohio St.3d at 112. Instead, as this court repeatedly has recognized, statutes of limitations represent the legislature's role as "'the final arbiter of public policy'" and "'judicial policy preferences may not be used to override valid legislative enactments.'" *Bortree*, 2022-Ohio-3890, at ¶ 20, quoting *State ex rel. Tritt v. State Emp. Relations Bd.*, 2002-Ohio-6437, ¶ 17; *see In re Estate of Centorbi*, 2011-Ohio-2267, ¶ 13, quoting *Weaver v. Edwin Shaw Hosp.*, 2004-Ohio-6549, ¶ 13, quoting *Wachendorf v. Shaver*, 149 Ohio St. 231 (1948), paragraph five of the syllabus ("A statute's wording '"may not be restricted, constricted, qualified, narrowed, enlarged or abridged . . . ."'").

{¶ 110} R.C. Ch. 2305 illustrates that the legislature knows how to write a discovery rule into a statute. *See, e.g.*, R.C. 2305.09(E) ("If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered."); R.C. 2305.112 (a civil action for identity fraud "shall be commenced within five years from the date on which the identity of the offender was discovered or reasonably should have been discovered"); R.C. 2305.113(D)(1) and (2) (incorporating discovery rules for medical, dental, optometric, and chiropractic claims); R.C. 2305.111(C)(1) ("If the defendant in an action brought by a victim of childhood sexual abuse asserting a claim resulting from childhood sexual abuse that occurs on or after August 3, 2006, has fraudulently concealed from the plaintiff facts that form the basis of the claim,

the running of the limitations period with regard to that claim is tolled until the time when the plaintiff discovers or in the exercise of due diligence should have discovered those facts.").

**{¶ 111}** Had the legislature thought that applying the discovery rule to defamation causes of action involving a secretive, concealed, or otherwise inherently unknowable publication would produce results that are "more nearly consonant with the demands of justice and the dictates of ethics," *Oliver* at 112, then it would have included language within R.C. Ch. 2305 to that effect, *see Rotkiske*, 589 U.S. at 14 ("Atextual judicial supplementation is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision."); *TRW*, 534 U.S. at 27-28 (declining to insert a discovery rule when a statute is silent on the issue and rejecting the "view that Congress can convey its refusal to adopt a discovery rule only by explicit command, rather than by implication from the structure or text of the particular statute").[17] The absence of discovery-rule language for defamation causes of action involving a secretive, concealed, or otherwise inherently unknowable publication, in the face of clear discovery-rule language elsewhere within the same chapter of the Revised Code, speaks volumes and evinces the legislature's intent that the discovery rule not apply to defamation causes of action that involve a secretive, concealed, or otherwise inherently unknowable publication.

---

17. Moreover, even if this court were to determine that R.C. 2305.11(A) is ambiguous, the legislature has instructed courts to consider, in part, "[t]he common law" when determining the meaning of ambiguous statutes, R.C. 1.49(D). As stated above, the common law indicates that defamation claims accrue upon publication, not upon the plaintiff's discovery of the publication or the plaintiff's discovery of an injury, even if the publication occurred in a secretive, concealed, or otherwise inherently unknowable manner.

## IV. Applying the Discovery Rule to "Secret" Defamation Is Contrary to Discovery-Rule Precedent

{¶ 112} To the extent that this court has any authority to read the discovery rule into R.C. 2305.11(A),[18] I agree with the first dissent's reasoning that the discovery rule does not apply to defamation causes of action when the publication of the defamatory statements was secretive, concealed, or otherwise inherently unknowable to the plaintiff. However, for the reasons stated earlier, I disagree with the first dissent's statement that defamation causes of action accrue upon "'first publication.'" Dissenting opinion of Kennedy, C.J., at ¶ 46, quoting *Miller*, 86 Ohio Misc.2d at 100.[19]

{¶ 113} Nevertheless, as explained above, one problem with applying the discovery rule to a defamation cause of action involving a secretive, concealed, or otherwise inherently unknowable publication is that this rule will apply to *all* defamation actions involving a secretive, concealed, or otherwise inherently

---

18. I am not suggesting that this court should overrule previous cases in which it stated that it could determine when a cause of action accrues when a statute does not explicitly mark the accrual date. *See, e.g.*, *O'Stricker*, 4 Ohio St.3d 84; *Oliver*, 5 Ohio St.3d 111; *Melnyk*, 32 Ohio St.2d 198. Instead, this court should recognize that those cases date to a time when the legislature had not enacted statutes that explicitly incorporated discovery rules for causes of action, unless the cause of action involved fraud, *see Peterson v. Teodosio*, 34 Ohio St.2d 161, 164, fn. * (1973), citing former R.C. 2305.09(C), Am.S.B. No. 5, 129 Ohio Laws 13, 177. Since that time, the legislature has enacted discovery rules for other causes of action. Thus, the legal landscape has changed. Consequently, this court should no longer presume that it has authority to supply a discovery rule if the legislature has not. Instead, as explained above, this court should examine the statutory text to determine whether the plain language includes a discovery rule.

19. This first-publication rule appears to have originated in a 1978 trial-court decision that cited no authority for the statement that libel causes of action accrue "upon the first publication." *Guccione v. Hustler Magazine*, 64 Ohio Misc. 59, 60, (C.P. 1978) (determining that in a libel action against a magazine publisher, "the right to file suit on a cause of action for libel accrues upon the first publication of the matter complained of"). Various Ohio courts have since repeated that rule. *See, e.g.*, *Miller* at 100; *Reimund v. Brown*, 1995 WL 643939, *3 (10th Dist. Nov. 2, 1995) ("A cause of action for libel accrues upon the first publication of the defamatory matter."); *Snell v. Drew*, 1985 WL 8216, *2 (6th Dist. Nov. 1, 1985) ("This court, however, expressly rejects the single publication rule, for the simple reason that it does not state Ohio law. The controlling rule in Ohio has been set forth in the case of *Guccione* . . . .").

unknowable publication. Thus, although I do not agree with the majority that the discovery rule applies to these types of defamation cases, I believe that the majority should limit the discovery rule that it is adopting to indicate that it applies only when the facts are like the facts alleged in Weidman's case. Those facts allege multiple publications, repetition, and nefarious conduct.

## V. Conclusion

{¶ 114} In sum, I would reverse the Twelfth District Court of Appeals' judgment that held that "the discovery rule applies to those libel actions where the publication of the defamatory statements was secretive, concealed, or otherwise inherently unknowable due to the nature of the publication." 2022-Ohio-1708, ¶ 29 (12th Dist.). However, given that this case resulted from the courts below misconstruing the law to mean that a libel cause of action "accrues when the written words are first published," *id.* at ¶ 20, and that we accepted jurisdiction over Hildebrant's discretionary appeal, 2022-Ohio-3636, I would remand this matter to the trial court with instructions to reconsider whether genuine issues of material fact remain using the Restatement's publication rule, with the word "publication" being a term of art, *Welling v. Weinfeld*, 2007-Ohio-2451, ¶ 53, quoting 3 Restatement, § 652D, Comment a (stating that "'"[p]ublication" . . . is a word of art'"), that does not mean first publication. As the Restatement recognizes, "[i]t is the general rule that each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises," 3 Restatement, § 577A, Comment a, even if the publication is secretive, concealed, or otherwise inherently unknowable to the plaintiff,[20] *see Hecht*, 66 Ohio St.3d at 460, citing 3

---

20. I understand that remanding a case to a trial court based on a rule that the parties have not specifically asserted is incorrect may seem unusual, but it would give the majority the result that it wishes to reach but does so for the right reasons. Plus, this type of decision is not unprecedented. *See Bennett v. Stanley*, 92 Ohio St.3d 35, 42 (2001) (adopting the attractive-nuisance doctrine); *id.*

Restatement, § 577(1), Comment a. Any additional contours of the publication rule are far outside the scope of this appeal, so I do not believe that saying more is necessary or prudent.

{¶ 115} Moreover, I do not believe that remanding this matter to the trial court to reconsider Hildebrant's summary-judgment motion using the correct accrual rule would be a futile exercise. Although the parties have suggested that the record contains two potential publication dates (i.e., December 20, 2011, and January 25, 2020), Hildebrant's burden was to prove the absence of a genuine issue of material fact regarding the accrual date for Weidman's defamation claim. Hildebrant presented evidence indicating that he last published the allegedly defamatory statements on January 25, 2020. However, the record further establishes that at some point between January 25 and February 27, 2020, someone told Sycamore Township Trustee Tom James about the statements.

{¶ 116} According to the "case-closing memo" of the auditor's special-investigations unit, on February 27, 2020, James contacted the auditor's office to report the allegations involving Weidman. Although the trial court stated in its order granting summary judgment that Hildebrant showed the 2011 email to James on January 25, 2020, the evidence that Hildebrant submitted in support of his

---

at 44-45 (Cook, J., dissenting) (concluding that the plaintiffs had "waived any right to pursue the attractive nuisance doctrine as a theory of recovery" when they specifically "disclaimed that theory of recovery" and asserted in their appellate briefing "that they '[did] not have to rely upon the doctrine of attractive nuisance to prevail'"); *see also Hudson v. Petrosurance, Inc.*, 2010-Ohio-4505, ¶ 29 (in discretionary appeal involving summary judgment, "[t]his court has complete and independent power of review as to all questions of law"); *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 39 ("courts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule"); *Consumers' Counsel v. Pub. Util. Comm.*, 58 Ohio St.2d 108, 110 (1979) ("As to questions of law, . . . this court has complete, independent power of review. Legal issues are accordingly subject to more intensive examination than are factual questions."); *see generally Onderko v. Richmond Mfg. Co.*, 31 Ohio St.3d 296, 299 (1987), quoting *Bosjnak v. Superior Sheet Steel Co.*, 145 Ohio St. 538 (1945), paragraph five of the syllabus ("'where, in instructing the jury, the court states a correct rule or principle of law and also states an incorrect rule or principle of law with reference to the same subject matter, no presumption arises that the correct rule was applied by the jury in the consideration of the issue presented, and the error in giving the incorrect rule will be deemed prejudicial'").

summary-judgment motion does not establish that James was present at the January 25, 2020 meeting, when Hildebrant showed the email to Sycamore Township Trustee James LaBarbara and Sycamore Township Administrator Raymond Warrick. In support of his summary-judgment motion, Hildebrant submitted affidavits from LaBarbara and Warrick, in which they stated that Hildebrant showed them the email on January 25, 2020. However, Hildebrant did not present any evidence indicating when James learned about the email.

{¶ 117} The record demonstrates that before James contacted the auditor, only four people knew about the 2011 email—Hildebrant, LaBarbara, Warrick, and Roberts. Furthermore, the auditor's memo indicates that James called the auditor's office on February 27, 2020, and James reported that he "recently" learned about the allegations. "Recently" could mean sometime between February 17 and February 27, 2020.[21] Because the evidence shows that Hildebrant, LaBarbara, Warrick, and Roberts were the only people who knew about the email before February 27, 2020, one of them must have informed James. For these reasons, the court should remand this matter to the trial court so that it can reevaluate this case using the correct accrual rule, not the first-publication rule.

{¶ 118} Accordingly, I respectfully dissent from the majority's judgment affirming the Twelfth District's judgment that held that the discovery rule applies to libel causes of action when the publication of the defamatory statements was secretive, concealed, or otherwise inherently unknowable to the plaintiff. I would reverse the Twelfth District's judgment and remand this matter to the trial court.

_____

Hemmer DeFrank Wessels, P.L.L.C., Todd V. McMurtry, and J. Will Huber, for appellee.

_____

21. Events taking place on or after February 17, 2020, would be relevant to the statute of limitations for Weidman's claims because he filed his complaint against Hildebrant on February 17, 2021.

Taft Stettinius & Hollister, L.L.P., Russell S. Sayre, Chad R. Ziepfel, and Medora M. Akers, for appellant.

The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, urging affirmance for amicus curiae, Ohio Employment Lawyers Association.

_____